75 Ill. App.3d 102 (1979)
393 N.E.2d 1069
In re ESTATE OF CARRIE JACOBSON, Deceased.  (VELMA McNEIL, Proponent-Appellant,
v.
DOROTHY MEAD JACOBSEN et al., Respondents-Appellees.)
No. 79-1.
Illinois Appellate Court  Fifth District.
Opinion filed July 13, 1979.
Rehearing denied August 15, 1979.
Frank H. Walker, of Mt. Vernon, for appellant.
Glenn E. Moore and Terry R. Black, both of Campbell, Furnall, Moore and Jacobsen, of Mt. Vernon, for appellees.
Judgment affirmed.
Mr. JUSTICE KUNCE delivered the opinion of the court:
The proponent of an instrument dated May 30, 1974, and purported to be the will of Carrie Jacobson appeals from an order entered by the Circuit Court of Jefferson County denying its admission to probate. Following the hearing on the petition to admit the will, the court found that all the elements necessary to admit the will had been proved except one  that the testator was of sound mind and memory when she signed the will.
*103 In a proceeding to admit a will to probate, the court's determination is governed by section 6-7(a) of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 6-7(a)), which provides:
"When each of 2 attesting witnesses to a will testifies that (1) he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or the testator acknowledged it to the witness as his act, (2) the will was attested by the witness in the presence of the testator and (3) he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will. The proponent may also introduce any other evidence competent to establish a will. If the proponent establishes the will by sufficient competent evidence, it shall be admitted to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will."
The record shows that Carrie Jacobson was over 90 years of age and suffering from arteriosclerosis when she died September 1, 1977. Her family had lived in Mt. Vernon for many years. Miss Jacobson had worked away from Mt. Vernon and moved back in the late 1960's. She owned apartments near her home which she rented to tenants. Her nieces, the respondents, were her nearest of kin, none of whom live in the State of Illinois. In November of 1973 a corporate trustee was appointed conservator of Carrie Jacobson's estate. It was at that time that the proponent, Velma McNeil, was engaged to live in Miss Jacobson's home and to provide care for her. Six months later the 1974 will was executed.
Petitions for the probate of two purported wills were filed and a hearing was held on both on September 23, 1977, before Judge William A. Alexander. A 1967 will was proved in accordance with the above statute and admitted to probate. The 1974 will was denied admission to probate. The respondents are beneficiaries under the 1967 will, and the proponent is the principal beneficiary under the 1974 will. After considering briefs, Judge Alexander entered an order on February 10, 1978, denying admission of the 1974 will to probate. A post-trial motion was heard by Judge Robert W. Whitmer after Judge Alexander's retirement, and he granted a rehearing on the petition to admit the 1974 will to probate. A second de novo hearing on the 1974 will was held August 24, 1978, after which Judge Whitmer again denied the will admission to probate. It is the order denying admission of the 1974 will with which we are concerned in *104 this appeal. That will contained an attestation clause reciting the statutory requirements.
Testifying at the hearing to admit the will to probate were the three attesting witnesses to the 1974 will, Irma Cross, Glen Kent and Pauline Kent. Irma Cross characterized herself as a "lifetime friend" to Miss Jacobson. Glen and Pauline Kent had been neighbors and tenants in one of Miss Jacobson's apartments since around 1970. Also testifying was Mary Doty, secretary for the attorney who prepared the will, and who represents the proponent. Ms. Doty was present when the will was executed but was not an attesting witness. The other two witnesses, Bertie Ham and Florence Bullock, were acquaintances of Miss Jacobson. Neither were present at the execution of the will.
The Kents testified that Miss Jacobson relied upon Mr. Kent for help in collecting rent and with other business matters. On one occasion Mr. Kent had accompanied Miss Jacobson to her bank where he observed 27 health and accident insurance policies in her safety deposit box. He said Miss Jacobson purchased insurance policies which she did not understand and which she later asked him to explain and to help her cancel; that she frequently asked him about some insurance or other business matter and within a short time repeated the question, apparently having forgotten that it had just been answered.
Mr. Kent also related how Miss Jacobson seemed lost in Mt. Vernon just a few blocks from her home and how, once, when he had taken her to a new bank she commented it was the first time she had seen the bank building when in fact she had been there previously that month. Mr. Kent's testimony was that these instances occurred prior to the execution of the 1974 will.
The Kents testified that in 1973 Miss Jacobson became unable to care for herself and began receiving "meals on wheels," a charitable service for elderly persons, and in November of 1973 Miss Jacobson had been found by police wandering in the rain and had required hospitalization. Mrs. McNeil was then employed to attend Miss Jacobson, and Miss Jacobson has never been left unattended since. When Mrs. McNeil had a day off, a substitute attendant was hired.
Mrs. Kent described how at her last visit with Miss Jacobson before the will was executed Miss Jacobson inquired as to how everyone was in Wayne City. Mrs. Kent explained to Miss Jacobson that she was Mrs. Kent, her neighbor. The ladies then continued to talk, but later Miss Jacobson commented, "Didn't we have some good times in Wayne City." Mrs. Kent stated she believed that Miss Jacobson did not, in fact, know her.
Each of the three attesting witnesses gave testimony as to the mental condition and capacity of Miss Jacobson on May 30, 1974. Irma Cross *105 stated several times that Miss Jacobson "knew she was making a will" and that, in her opinion, very few people Miss Jacobson's age were of sound mind and memory. When asked whether she believed that Carrie Jacobson was of sound mind and memory at the time the will was signed, Mrs. Cross replied,
"A. I knew she wanted a new will, she wanted to make a new will, that is all she talked about, a new will.
Q. Do you think her mind was sound enough to know what was in the will, what she was doing?
A. Well, I think she knew that she wanted  I am just going to say she wanted another will, and I really don't know. I am not going to say."
Mrs. Cross testified Miss Jacobson did not know the extent of her property when she signed the will and that Miss Jacobson had been opposed to the First Methodist Church, one of the will's legatees.
Mr. Kent testified that he signed the will against his better judgment. He said he believed it was not proper for Miss Jacobson to make a will. He was skeptical about witnessing the will, and after he had done so he felt he had done a very stupid thing. Miss Jacobson, he said was "very, very confused." He testified clearly and affirmatively that, in his opinion, Miss Jacobson was not competent to make a will. He said he signed the will to be neighborly and to satisfy Miss Jacobson.
His wife, Pauline Kent, testified unequivocally that, in her opinion, Miss Jacobson was not competent to make a will. She said she signed the will to accommodate everyone, to be cooperative.
Ms. Doty, the legal secretary, testified that in her opinion, Carrie Jacobson was of sound mind and memory at the time she executed the will. She believed that Miss Jacobson knew the extent of her property and who her relatives were. Ms. Doty stated she had first met Miss Jacobson about 30 days before the will was signed.
Florence Bullock also testified that in her opinion, Miss Jacobson was of sound mind the day the will was signed. Mrs. Bullock was a friend of Velma McNeil, the proponent, and had, on occasions, served as a substitute sitter for Miss Jacobson. Her acquaintance with Miss Jacobson began when Mrs. McNeil commenced attending Miss Jacobson. Mrs. Bullock admitted to the deterioration of Miss Jacobson's mind, but claimed the deterioration had begun about one year after the time Miss Jacobson signed the will.
Bertie Ham testified that she believed Miss Jacobson was of sound mind and memory in May of 1974. She became acquainted with Miss Jacobson when she delivered "meals on wheels" to Miss Jacobson's home on three or four occasions. On those occasions, she visited with Miss Jacobson for about 30 minutes. She was uncertain as to the year during *106 which she had made these deliveries to Miss Jacobson but believed them to have been made near the time Mrs. McNeil came to take care of Miss Jacobson.
 1, 2 We have been well briefed on the legal points and authorities which apply to our review and we note them here. The burden of proof in establishing the requirements necessary to admit a will to probate is upon the proponent of the will. (In re Estate of Salzman (1974), 17 Ill. App.3d 304, 308 N.E.2d 83, 86.) The law favors admission of a will to probate in order that the administration of the estate may proceed, but the requirements of the statute are mandatory and must be complied with. (Spangler v. Bell (1945), 390 Ill. 152, 154.) A properly executed attestation clause creates a presumption or prima facie case that a will has been duly executed, and that presumption has been held to be sufficient to admit a will to probate in various circumstances, such as where several years have passed and the attesting witnesses have no recollection as to the details of the execution (In re Estate of Russell (1970), 130 Ill. App.2d 839, 264 N.E.2d 269), where an ulterior motive to testify falsely is shown as to the attesting witnesses (In re Estate of Koss (1967), 84 Ill. App.2d 59, 228 N.E.2d 510), or where the testimony of the attesting witnesses is vague (In re Last Will and Testament of Rutledge (1955), 5 Ill. App.2d 355, 125 N.E.2d 683). The presumption, however, is not conclusive and the inquiry is whether valid execution of the will had been established. In re Estate of Plummer (1940), 307 Ill. App. 378.
The trial judge, being able to observe and hear the witnesses as they testified about Miss Jacobson and her state of mind during the time in question, was in a superior position to assess the credibility of the witnesses and to weigh the evidence before him. He heard two of the three attesting witnesses state unambiguously that Carrie Jacobson was not of sound mind and memory on May 30, 1974, when the instrument was signed. He heard the third attesting witness refuse to say that the testator was of sound mind on that day. These three witnesses knew the testator well. Irma Cross had known Miss Jacobson all her life; the Kents had been friends, neighbors and tenants of Miss Jacobson for some 8 years. These witnesses did not fail to recollect details of the execution. No ulterior motive to testify falsely was shown as to them and their testimony could not be described as vague. Furthermore, we recognize that a layman might attest a will notwithstanding his doubts, at the direction of an attorney or on the assumption that it was all right since an attorney was present and would not proceed otherwise. Spangler v. Bell (1945), 390 Ill. 152, 159.
The trial judge also heard the testimony of three witnesses who believed Miss Jacobson was of sound mind and memory the day the will was signed. We note, however, that only one of them had been present *107 with Miss Jacobson the day she signed the will. We also note that Ms. Doty was an employee of the proponent's attorney and that Mrs. Bullock was a friend of the proponent. The trial judge could have considered the interest these witnesses may have had and the short time both had known Miss Jacobson prior to May 30, 1974. The trial court may have given little weight to Mrs. Ham's testimony in light of her vagueness about when she was acquainted with Miss Jacobson.
 3 Having examined and assessed the evidence in this record, we hold that the record contains sufficient evidence to support the trial court's conclusion that the proponent of the 1974 will failed to sufficiently prove that the testator was of sound mind and memory the day she signed the will.
 4 The proceeding we have reviewed was a hearing pursuant to section 6-7(a) of the Probate Act for the probate of a will; it was not a will contest. We realize that the law favors swift admission of a will to probate and for that reason provides for a presumption of validity when the will contains a properly executed attestation clause. We believe, however, that had the legislature intended the testator's state of mind to be at issue only in a will-contest proceeding, then section 6-7(a) would not include subparagraph (3). Because subparagraph (3) is included, we believe that where proof of the testator's soundness of mind and memory at the time the will was executed is patently insufficient, the will must be denied admission to probate.
This record contains the uncommon circumstance of all attesting witnesses' refusing to testify at the hearing on the will that the testator was of sound mind and memory. Its facts are similar to those in In re Estate of Plummer (1940), 307 Ill. App. 378 (abstract). In Plummer a will containing a complete attestation clause was offered for probate, but at that hearing and contrary to the recitation of the attestation clause, one attesting witness testified that the testator was not of sound mind and disposing memory. The other attesting witness testified similarly to our Mrs. Cross:
"Q. Did you believe her to be of sound mind and disposing memory at the time she signed that instrument?
A. She knew she was making a will."
The court noted in its unpublished opinion,
"The attestation clause is in the regular statutory form, and includes the statement that at the time of the execution of the will the witnesses believed the testatrix to be of sound and disposing mind and memory. Upon trial in the circuit court, however, Miss Barker entirely repudiated her opinion and gave her reasons therefor, as herein before set forth and Mrs. Davies, while testifying that she believed Mrs. Plummer knew she was executing a will, stated that Mrs. Plummer was seriously ill, hazy and *108 confused, and at best her testimony indicates that she entertained considerable doubt as to the testamentary capacity of the testatrix."
The Plummer court also considered testimony from nonattesting witnesses. They were persons who had seen the testator 20 to 30 days before the will was executed and each testified the testator was of sound mind and memory. The Plummer court recited the general rule that where the attestation clause of a will is in due form and bears the genuine signatures of the testatrix and the subscribing witnesses, a prima facie case is shown but proceeded to find that the attesting witnesses themselves rebutted the prima facie case, commenting:
"[T]his prima facie evidence may be overcome by the testimony of witnesses. In this proceeding the attesting witnesses themselves rebutted the prima facie case. * * * [The statutory provision] on Wills, provides that before a will is entitled to probate four things must occur, namely: the will must be in writing and signed by the testator or testatrix, or by someone under her direction; it must be attested by two or more credible witnesses; two witnesses must prove that they saw the testatrix sign the will in their presence, or that she acknowledged the same to be her act and deed; and that two or more witnesses must swear that they believed the testatrix to be of sound mind and memory at the time of the signing. The last requirement is entirely absent in this proceeding. Neither of the attesting witnesses was of the opinion that the testatrix was of sound mind and memory when she made the will * * *."
The same observations apply here. Appellant has cited no cases wherein all attesting witnesses testified to failure of due execution. Accordingly, we believe this is another of the rare instances wherein the presumption of due execution must be found to have been rebutted and the proof of the testator's soundness of mind and memory to have been patently insufficient.
Accordingly, the judgment of the Circuit Court of Jefferson County denying admission of the 1974 will to probate is affirmed.
Affirmed.
KARNS and KASSERMAN, JJ., concur.