Joyce CARLSON, Individually as and as Personal Representative of Estate of Noel Mangus and Elizabeth Alderson, Appellants–Plaintiffs,

v.

Ernest and Anita WARREN, Appellees–Defendants.

No. 54A01–07075–CCV–197.

Court of Appeals of Indiana.

Dec. 27, 2007.

Bruce D. Brattain, Mario Garcia, Brattain & Minnix, Indianapolis, IN, Attorneys for Appellants.

Daniel L. Taylor, Ann M. Schneider, Kincaid, Taylor, Sims, Chadd & Minnette, P.C., Crawfordsville, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Joyce Carlson ("Carlson"), the administrator of Noel Mangus's ("Mangus") estate, and Elizabeth Alderson ("Alderson"), Mangus's sister, challenge Mangus's *inter vivos* conveyance of his farmland to his caretakers, Ernest and Anita Warren (the "Warrens" or "Ernest" or "Anita," respectively). We find that, by designating deposition testimony in support of their motion for summary judgment that relates to the deed transfer at issue in this case, Carlson and Alderson waived the applicability of Indiana Code § 34–45–2–4 ("Dead Man's Statute"). Further, the Warrens' attorney's testimony regarding his preparation of the warranty deed in question was relevant to show that he executed the deed in conformity with his habit and was therefore admissible. Finally, we conclude that summary judgment in favor of the Warrens was appropriate because Carlson and Alderson failed to show that the Warrens and Mangus had a confidential relationship by operation of law and otherwise failed to meet their initial burdens of proof on their tort claims against the Warrens. We affirm.

### Facts and Procedural History

Noel Mangus ("Mangus") owned 117.33 acres of farmland in Montgomery County. This land was part of a larger family farm. In 2000, due to failing health, Mangus moved in to the Warrens' home. Ernest was Mangus's nephew. Until late 2003, when Mangus moved to a nursing facility, the Warrens cared for him. They assisted him with daily activities, provided him with food, clothing, and shelter, and oversaw his medication and doctor appointments. Additionally, at Mangus's direction, they farmed his land and handled his finances. Appellant's App. p. 80, 90–91, 93–94. For a period of time prior to 2000, as well, Ernest managed Mangus's farm.

On August 6, 2003, Mangus executed a warranty deed in which he retained a life

interest in the parcel of land and granted the Warrens a remainder interest. Attorney Richard McGaughey ("Attorney McGaughey") prepared the deed. Mangus died intestate on August 25, 2004, leaving no spouse or children. He was survived by his sister, Alderson, his niece, Carlson, and his nephew, Ernest, the sole beneficiaries of his estate under Indiana intestacy law. The trial court appointed Carlson administrator of Mangus's estate.

Carlson and Alderson then filed suit to set aside the conveyance of the land, alleging fraud, undue influence, constructive fraud, breach of fiduciary duty, and conversion, *id.* at 32–34, and later amended their complaint to include tortious interference with an inheritance, *id.* at 47. The Warrens denied any wrongdoing and filed a motion for summary judgment. In response, Carlson and Alderson filed a memorandum in opposition to the Warrens' motion and also moved for summary judgment. On the same day, Carlson and Alderson filed a motion to strike certain evidence designated in support of the Warrens' motion. Specifically, they asked the court to strike testimonial evidence given during depositions of Ernest and Attorney McGaughey regarding the deed transaction of August 6, 2003. They argued that Ernest's testimonial evidence was barred by the Dead Man's Statute and that Attorney McGaughey's testimony was barred by the Dead Man's Statute and Indiana Evidence Rules 406 and 602. On March 23, 2007, the trial court denied the motion to strike and granted the Warrens' motion for summary judgment on all counts, and this appeal ensued.

### Discussion and Decision

On appeal, Carlson and Alderson raise three issues. First, they argue that the trial court erred in refusing to strike deposition testimony given by Ernest regarding the circumstances surrounding the convey-ance. Second, they contend that the trial court erred in refusing to strike deposition testimony given by Attorney McGaughey regarding his preparation of the warranty deed. Finally, they argue that the trial court erred in granting summary judgment to the Warrens on the issues of undue influence, constructive fraud and breach of fiduciary duty, and tortious interference with an inheritance. We address each in turn.

### I. Admission of Evidence

■ Carlson and Alderson argue that the trial court erred in denying their motion to strike certain deposition testimony by Ernest and Attorney McGaughey from the Warrens' designation of evidence. A ruling regarding the admission or exclusion of evidence, including a trial court's ruling on a motion to strike, is typically reviewed for an abuse of discretion. *Hirsch v. State*, 697 N.E.2d 37, 40 (Ind. 1998). Specifically, we review challenges to the admission or exclusion of evidence based upon questions of witness competency or relevance for an abuse of discretion. *Hughes v. State*, 546 N.E.2d 1203, 1209 (Ind.1989) (determination of witness competency reviewed for abuse of discretion); *Williams v. State*, 749 N.E.2d 1139, 1142 (Ind.2001) (determination of relevance reviewed for abuse of discretion). Only when the decision is clearly against the logic and effect of the facts and circumstances will we reverse. *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 195 (Ind.Ct. App.2007) (citing *McCutchan v. Blanck*, 846 N.E.2d 256, 260 (Ind.Ct.App.2006)).

### A. Ernest's Testimony: Dead Man's Statute

■ Carlson and Alderson argue that Ernest's testimony regarding the circumstances surrounding the August 6, 2003, deed is barred by Indiana's Dead Man's

Statute.[1] Indiana Evidence Rule 601 provides that "[e]very person is competent to be a witness except as otherwise provided" by the Evidence Rules or the Indiana Code. Indiana Code § 34–45–2–4 provides in relevant part:

(a) This section applies to suits or proceedings:

(1) in which an executor or administrator is a party;

(2) involving matters that occurred during the lifetime of the decedent; and

(3) where a judgment or allowance may be made or rendered for or against the estate represented by the executor or administrator.

* * * *

(d) Except as provided in subsection (e), a person:

(1) who is a necessary party to the issue or record; and

(2) whose interest is adverse to the estate;

is not a competent witness as to matters against the estate.

Thus, because Ernest is a necessary party to the action and his interest is adverse to that of the estate—namely, his claim to the parcel of land deeded by Mangus—Carlson and Alderson contend that he is an incompetent witness. The trial court reviewed this claim and found that the plaintiffs waived the application of the Dead Man's Statute by relying upon portions of Ernest's deposition in support of their motion and memorandum to the trial court. Appellants' App. p. 16.

■ The primary purpose of the Dead Man's Statute is to "ensure that when one party to a transaction has had her lips sealed by death the other party's lips are sealed by law." *Taylor v. Taylor,* 643 N.E.2d 893, 896 (Ind.1994) (citing *Johnson v. Estate of Rayburn,* 587 N.E.2d 182 (Ind. Ct.App.1992), *superceded by statute on other grounds* ). By rendering certain parties legally incompetent to testify in matters involving the decedent, the statute "put[s] the surviving party on equal footing with the decedent with respect to matters that occurred during the decedent's lifetime." *Johnson,* 587 N.E.2d at 185. This aims to protect a decedent's estate from "spurious claims." *Id.* at 184 (citing *State Farm Life Ins. Co. v. Fort Wayne Nat'l Bank,* 474 N.E.2d 524, 526 (Ind.Ct. App.1985)). Ultimately, Indiana's Dead Man's Statute is a "rule[ ] of fairness and mutuality." *Id.* (citing *State Farm Life Ins. Co.,* 474 N.E.2d at 526; *Satterthwaite v. Estate of Satterthwaite,* 420 N.E.2d 287, 289 (Ind.Ct.App.1981), *reh'g denied* ). "The application of the statute is limited to circumstances in which the decedent, if alive, could have refuted the testimony of the surviving party." *Johnson,* 587 N.E.2d at 185.

A party can, however, waive the application of the Dead Man's Statute, thus allowing the testimony of parties who the statute would exclude. Our Supreme Court has clarified that

[A]t the point when a party employs a witness's deposition and/or admissions in

---

1. Carlson and Alderson also contend, "The decision of the trial court that attorney McGaughey's testimony was not barred under Indiana's Dead Man's Statute is erroneous." Appellants' Br. p. 9. However, this assertion is not supported by argument. Absent argument and citation to relevant authority, an issue is waived on appeal. Ind. Appellate Rule 46(A)(8)(a); *Davis v. State,* 835 N.E.2d 1102, 1113 (Ind.Ct.App.2005), *trans. denied.* The only argument developed in the Appellants' Brief regarding Attorney McGaughey's testimony is in regard to its admissibility under Indiana Evidence Rule 406, and we address that question in the following section.

court, the party is in fact using the information ... for an evidentiary purpose. The party is treating, and hopes that the court will treat, the ... information as establishing some relevant fact about the case.

In such circumstances, if the deposition testimony concerns matters within the scope of the Dead Man's statute, then the party who offered the deposition testimony into evidence would have waived the incompetency of the witness, because that party has relinquished the benefit bestowed by the statute.

*Taylor*, 643 N.E.2d at 895.

Here, Carlson and Alderson designated more than fourteen excerpts from Ernest's deposition in support of their motion for summary judgment and memorandum in opposition to the Warrens' motion for summary judgment. Appellant's App. p. 133. In response to the trial court's determination that they waived the application of the Dead Man's Statute, they argue that the portions of Ernest's deposition upon which they relied did not implicate it. Citing to the distinction between admissible and inadmissible evidence under the Dead Man's Statute, *Johnson*, 587 N.E.2d at 185, Carlson and Alderson argue that the evidence that they used was admissible and, thus, did not trigger waiver of the statute's protection.

We agree that, in evaluating competency under the Dead Man's Statute, this Court has recognized a distinction between the types of information that might be provided by a witness. *Johnson*, 587 N.E.2d at 185 ("[T]he dead man's statute applies only where the claimant is prepared to testify as to matters or transactions concerning the decedent, and not merely as to matters that occurred while the decedent was alive...."). However, we find that the evidence upon which the plaintiffs relied related to "matters or transactions concerning the decedent" and *was* of the sort "which the decedent, if alive, could have refuted." *Id.* First, as a practical matter, we fail to perceive why the plaintiffs would wish to admit any statements in their designation of evidence that were not related to the transaction at issue. More importantly, in their motion to the trial court, the plaintiffs argued that the designated evidence "overwhelmingly establishes that ... a strong fiduciary relationship existed" between the Warrens and Mangus. Appellants' App. p. 129. The plaintiffs' designated evidence included testimony, for example, that Ernest assisted Mangus by filing his tax returns, Appellants' App. p. 82, and shared a bank account with Mangus in order to assist him with his finances, *id.* at 91, that the Warrens provided shelter, food, clothing, assistance with daily activities, and medication management for Mangus, *id.* at 85–93, and that the Warrens enjoyed the closest relationship with Mangus of anyone in the family, *id.* at 85. These very factors go to the core of the relationship between the Warrens and Mangus, are related to the circumstances surrounding the deed transaction, and are matters which Mangus, if living, could have refuted. *Johnson*, 587 N.E.2d at 185. Therefore, the trial court did not abuse its discretion in determining that the plaintiffs waived the application of the Dead Man's Statute by relying upon this evidence.

**B. Attorney McGaughey's Testimony: Habit Evidence**

█ Carlson and Alderson also challenge the trial court's denial of their motion to strike Attorney McGaughey's deposition testimony regarding the preparation of the deed. On appeal, the plaintiffs' only contention regarding Attorney McGaughey's testimony is that it was irrelevant to show that he drafted the 2003 deed in conformity with his habit and was there-

fore not admissible under Indiana Evidence Rule 406. Appellants' Br. p. 17.

Indiana Evidence Rule 406 provides:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Habit evidence is generally defined as "[e]vidence of one's regular response to a repeated specific situation." *Black's Law Dictionary* 597 (8th ed.2004). *See also* 1 McCormick § 195 (2006). Relevant evidence to this inquiry is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401.

We disagree that Attorney McGaughey's testimony was irrelevant to the question of his habit. Attorney McGaughey testified during his deposition that he had no recollection of drafting the 2003 deed or meeting with Mangus and the Warrens to execute it. Appellants' App. p. 158–59. However, in the portions of his deposition which the plaintiffs sought to strike, he testified regarding the "normal way" that he executes deeds. *Id.* at 158. Attorney McGaughey testified that he prepares between five hundred and seven hundred deeds per year, *id.* at 162, and that his normal practice is to talk with the individual preparing to execute a deed and observe certain interactions in order to evaluate the person's competency and the voluntariness of the transaction, *id.* at 159–63. Carlson and Alderson contend that this testimony is not relevant because it is not "sufficiently definite," Appellants' Br. p. 19, in that "the Mangus transaction could have taken place in a manner differ-

ent from the circumstances where [Attorney McGaughey's] standard practices are used," *id.* at 21. However, we have previously rejected "plac[ing] too fine a point on the matter" in a case quite similar to the one before us today. *Fitch v. Maesch,* 690 N.E.2d 350, 353 (Ind.Ct.App.1998), *trans. denied.* Again, the question is whether Attorney McGaughey's deposition testimony has "any tendency" to make it "more probable or less probable" that Mangus was competent to execute the deed and that he did so voluntarily. Evid. R. 401. The evidence demonstrates that Attorney McGaughey's habit is to engage in dialogue with and observe the demeanor of individuals preparing to execute deeds. Further, it is his routine practice to refuse to execute a deed where an individual appears to be either incompetent or an involuntary participant in the transaction. Appellants' App. p. 161, 163. The testimony in question is highly relevant. The trial court did not abuse its discretion in denying the plaintiffs' motion to strike this evidence.

## II. Summary Judgment

Finally, Carlson and Alderson contend that the trial court erred in granting summary judgment to the Warrens on their claims of undue influence, constructive fraud and breach of fiduciary duty, and tortious interference with an inheritance. When reviewing a trial court's grant of summary judgment, we apply the same standard used by the trial court. *Auto–Owners Ins. Co. v. Harvey,* 842 N.E.2d 1279, 1282 (Ind.2006) (citing *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003)). Summary judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). On appellate review, "all facts and inferences

drawn from them are construed in favor of the non-moving party." *Auto–Owners Ins. Co.*, 842 N.E.2d at 1282 (citing *Reeder*, 788 N.E.2d at 1240). We address each of the plaintiffs' claims in turn.[2]

### A. Undue Influence

■■■ Carlson and Alderson allege that, by virtue of the Warrens' relationship with Mangus, the Warrens exercised undue influence over him and benefited from the 2003 deed. Undue influence is "the exercise of sufficient control over [a] person to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." *In re Knepper*, 856 N.E.2d 150, 154 (Ind.Ct.App. 2006), *reh'g granted on other grounds*, 861 N.E.2d 717 (Ind.Ct.App.2007), *trans. denied*. It may flow from the abuse of a confidential relationship in which "confidence is reposed by one party in another with resulting superiority and influence exercised by the other." *In re Neu*, 588 N.E.2d 567, 570 (Ind.Ct.App.1992).

Indiana law has long provided that a confidential relationship sufficient to allow for a successful undue influence claim may arise either as a matter of law or can be shown on the particular facts of a case. *Lucas v. Frazee*, 471 N.E.2d 1163, 1166 (Ind.Ct.App.1984). *See also Reiss v. Reiss*, 516 N.E.2d 7, 8 (Ind.1987). These two types of confidential relationships— "those in which a fiduciary relationship arises by operation of law between the litigating parties, and ... those in which a confidential relationship in fact is shown to exist"—are treated very differently when

we evaluate claims of undue influence or fraud. *Lucas*, 471 N.E.2d at 1166.[3]

■■■ Confidential relationships as a matter of law include relationships such as those of "attorney and client, guardian and ward, principal and agent, pastor and parishioner ... [and] parent and child," and we have noted that there may be others. *Supervised Estate of Allender v. Allender*, 833 N.E.2d 529, 533 (Ind.Ct.App.2005) (citation omitted), *reh'g denied, trans. denied*. These relationships "raise a *presumption* of trust and confidence as to the subordinate party on the one side and a corresponding influence as to the dominant party on the other." *Id.* (emphasis added). This Court has recognized that "when a [confidential relationship as a matter of law] exists and the fiduciary benefits from a questioned transaction, a presumption of undue influence arises and the burden shifts to the fiduciary to rebut the presumption." *In re Knepper*, 856 N.E.2d at 154 (citing *In re Wade*, 768 N.E.2d 957, 961–63 (Ind.Ct.App.2002), *trans. denied); see also Reiss*, 516 N.E.2d at 8. This presumption may be rebutted by "establishing through clear and convincing evidence that [the fiduciary] acted in good faith, did not take advantage of [the] position of trust, and that the transaction was fair and equitable." *Id.* (citing *Villanella v. Godbey*, 632 N.E.2d 786, 790 (Ind.Ct.App.1994)). On appeal, we review "whether the fiduciary presented sufficient evidence from which the trial court reasonably concluded that the presumption of undue influence was rebutted." *Id.* (citing *Villanella*, 632 N.E.2d at 791).

---

**2.** The plaintiffs do not appeal the trial court's conclusions regarding fraud and conversion.

**3.** *Lucas* uses the term "fiduciary relationship" to distinguish confidential relationships arising as a matter of law from confidential relationships in fact. It has been observed that " '[f]iduciary' is a vague term, and it has been

pressed into service for a number of ends." D.W.M. Waters, *The Constructive Trust* 4 (1964). We employ the terms "confidential relationship as a matter of law" and "confidential relationship in fact" throughout this opinion to facilitate clarity.

In the alternative, the facts of a given case may *"show* a relation of trust and confidence justifying one in relying thereon," even where there is no legal presumption of such trust. *Middelkamp v. Hanewich,* 147 Ind.App. 561, 263 N.E.2d 189, 193 (1970) (emphasis added) (quoting *Firebaugh v. Trough,* 57 Ind.App. 421, 107 N.E. 301, 303 (1914)). Instead of creating a rebuttable presumption of undue influence, the burden in such a situation rests with the plaintiff to establish not only the existence of a confidential relationship in fact between the parties but also to prove that "the parties to the questioned transaction did not deal on terms of equality." *Lucas,* 471 N.E.2d at 1167; *see also Reiss,* 516 N.E.2d at 8. The plaintiff "must prove either the dominant party dealt with superior knowledge of the matter derived from a fiduciary relationship, or dealt from a position of overpowering influence as to the subordinate party." *Id.; see also Reiss,* 516 N.E.2d at 8. Only when the plaintiff has shown this and that "the result was an unfair advantage to the dominant party" will the burden of proof shift to the defendant. *Id.; see also Reiss,* 516 N.E.2d at 8. The defendant then has an affirmative duty to show that "no deception was practiced, no undue influence was used, and all was fair, open, voluntary, and well understood." *Id.*

The trial court in this case found that there was no evidence supporting the plaintiffs' claim of undue influence because "[a] relationship between Mangus and the Warrens did not exist by operation of law, and the designated evidence fails to establish genuine issues of material fact." Appellants' App. p. 29. We turn first to the question of the relationship between Mangus and the Warrens and the appropriate burden-shifting paradigm.

We agree with the trial court that the relationship between Mangus and the Warrens was not one "recognized by operation of law." *Id.* at 24. Indeed, the Warrens did not serve as legal guardians for Mangus, *see Supervised Estate of Allender,* 833 N.E.2d at 533, nor is there any indication that they held a power of attorney for him at the time of the deed transaction,[4] *see Meyer v. Wright,* 854 N.E.2d 57, 61 n. 2 (Ind.Ct.App.2006), *trans. denied.*

The next question is whether the relationship between Mangus and the Warrens was a confidential relationship in fact such that the second burden-shifting mechanism applies. However, under the burden-shifting analysis for situations involving confidential relationships in fact, plaintiffs must meet their initial burden of proof in order to survive a summary judgment motion. *Lucas,* 471 N.E.2d at 1167. The plaintiffs in this case have failed to meet their burden of proving that the parties to the deed transaction dealt unequally and that the Warrens had "superior knowledge of the matter" or exercised "overpowering influence." *Id.* The designated evidence reveals that Mangus, although ailing, sufficiently retained his faculties during the time he lived with the Warrens, Appellants' App. p. 113, 114–16, that he expressed a wish to keep his farm intact and trusted Ernest to effectuate that wish, *id.*

---

**4.** In *Outlaw v. Danks,* 832 N.E.2d 1108 (Ind. Ct.App.2005), *trans. denied,* this Court recognized a fiduciary relationship and accompanying rebuttable presumption of undue influence between a decedent and her caretaker nephew. In that case, however, the nephew was the decedent's agent and attorney in fact. We have recognized that a power of attorney creates a confidential relationship as a matter of law. *Meyer,* 854 N.E.2d at 61 n. 2. The plaintiffs do not allege that the Warrens held a power of attorney for Mangus at the time of the deed transaction. The record reflects that the Warrens may have had a power of attorney at a later date, when Mangus entered a nursing facility. Appellant's App. p. 94.

at 80–81, 105, that the Warrens were the only relatives with whom Mangus had significant contact during the final years of his life, *id.* at 85, 96, and that the relationship between Mangus and the Warrens was one of mutual love and affection. Notably, all of the evidence upon which the plaintiffs rely came from depositions of Ernest and Attorney McGaughey because Carlson and Alderson had little to no contact with Mangus during the final years of his life and therefore had no personal knowledge of the circumstances surrounding the deed transaction. *Id.* at 96. The record is devoid of any evidence that the Warrens acted in any way but in good faith or that they dealt unequally with the decedent, had superior knowledge of the deed transaction, or exercised overpowering influence such that they unduly influenced Mangus. *See Lucas*, 471 N.E.2d at 1167. Thus, there is no issue of material fact, and summary judgment in favor of the Warrens on this issue was appropriate.

## B. Constructive Fraud and Breach of Fiduciary Duty

Carlson and Alderson next argue that the trial court improperly granted summary judgment to the Warrens on the question of whether the Warrens committed constructive fraud and, correspondingly, breach of fiduciary duty. Constructive fraud "arises by operation of law from a course of conduct that, if sanctioned by law, would secure an unconscionable advantage, irrespective of the factual intent to defraud." *Sees v. Bank One, IN, N.A.*, 839 N.E.2d 154, 164 n. 8 (Ind.2005). To succeed on a claim of constructive fraud, the following elements must be established:

(i) a duty owing by the party accused of the misconduct to the complaining party due to their relationship;

(ii) violation of that duty by the making of deceptive material misrepresentations of past or existing facts or by remaining silent when a duty to speak exists;

(iii) reliance thereon by the complaining party;

(iv) injury to the complaining party as a proximate result thereof; and

(v) the gaining of an advantage by the party accused of the misconduct at the expense of the complaining party.

*In re Scahill*, 767 N.E.2d 976, 979 (Ind. 2002) (citing *Rice v. Strunk*, 670 N.E.2d 1280, 1284 (Ind.1996)). In cases where a confidential relationship as a matter of law exists between the parties, once the plaintiff establishes the existence of that relationship and that "the questioned transaction between those two parties resulted in an advantage to the dominant person in whom trust and confidence was reposed by the subordinate," the law imposes a rebuttable presumption of constructive fraud upon the defendant identical to the presumption of undue influence described above. *Lucas*, 471 N.E.2d at 1167.

Carlson and Alderson argue that a confidential relationship as a matter of law existed between Mangus and the Warrens such that, once they showed that the Warrens benefited through the deed transaction, the burden shifted to the Warrens to disprove all of the remaining elements of constructive fraud. We disagree. We have already determined that the trial court properly found that Mangus and the Warrens did not have a confidential relationship as a matter of law. As such, the burden remained with the plaintiffs to establish the necessary elements of this claim. The designated evidence presents no issue of material fact on this issue because, in particular, there is absolutely no evidence presented that the Warrens made "deceptive material misrepresentations" to Mangus to induce the deed transaction. *Scahill*, 767 N.E.2d at 979. Sum-

mary judgment in favor of the Warrens was appropriate.

## C. Tortious Interference with an Inheritance

■■■■ Finally, Carlson and Alderson contend that the Warrens tortiously interfered with their inheritance by exerting undue influence over Mangus to induce him to execute the deed. To prevail on a claim of tortious interference with an inheritance, Carlson and Alderson must show that the Warrens intentionally prevented them, by using fraud or other tortious means, from receiving an inheritance from Mangus that they otherwise would have received. *Minton v. Sackett*, 671 N.E.2d 160, 162 (Ind.Ct.App.1996).[5] The plaintiffs base their claim in this regard entirely upon a theory of undue influence. We have already determined that there is no question of material fact regarding whether the Warrens exercised undue influence over Mangus. Thus, summary judgment was appropriate on this claim.

### Conclusion

The trial court properly denied the plaintiffs' motion to strike and granted the defendants' motion for summary judgment. Affirmed.

BAKER, C.J., and BAILEY, J., concur.

---

**5.** We note that this Court first addressed the question of whether Indiana recognizes a cause of action for tortious interference with an inheritance in 1996. *Minton,* 671 N.E.2d at 162. Our Supreme Court has not yet addressed the issue.