Heather SCRIBNER and Hollie Noah and Heidi Smith, Appellants,

v.

Wilgus S. GIBBS, Jr., Individually,

and

Wilgus S. Gibbs, Jr., Executor of the Purported Will of Wilgus Gibbs, Sr., Appellee.

No. 81A01–1011–ES–560.

Court of Appeals of Indiana.

July 15, 2011.

Thomas D. Seal, Law Office of Thomas D. Seal, Richmond, IN, Attorney for Appellant.

David E. Kress, Benesch Friedlander Coplan & Aronoff, LLP, Richmond, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Heather Scribner, Hollie Noah, and Heidi Smith (collectively "the Granddaughters") appeal the trial court's grant of summary judgment in favor of Wilgus Gibbs, Jr. ("Gibbs Jr."), individually and as personal representative of the estate and executor of the Will of Wilgus Gibbs, Sr. ("Gibbs Sr."). We affirm.

### Issues

The restated issues before us are:

I. whether the proper execution of Gibbs Sr.'s Will was proven as a matter of law; and

II. whether there is any evidence that Gibbs Sr.'s Will is invalid for reasons of undue influence, fraud, or mistake.

### Facts

Gibbs Sr. was the father of two children: Gibbs Jr., and the Granddaughters' mother, who died in 2006. On the morning of December 29, 2009, Gibbs Jr. called the law office of Mike Douglass in Liberty, Indiana, and spoke to Douglass's secretary, Barbara Montgomery. Gibbs Jr. told Montgomery that his father, Gibbs Sr., wanted a will prepared very quickly. Gibbs Sr. was suffering from a progressive lung disease and had an appointment to see a doctor at 1 p.m., and it was feared that Gibbs Sr. might be hospitalized after that appointment. Gibbs Jr. told Montgomery what his father wanted in the will, specifically, that Gibbs Jr. would receive the entirety of Gibbs Sr.'s estate to the exclusion of the Granddaughters. Douglass was out-of-town, but Montgomery prepared the will according to Gibbs Jr.'s instructions, then read it over the phone to Douglass, who indicated that the will was properly written.

Later that day, before the doctor's appointment, Gibbs Jr. drove Gibbs Sr. to Douglass's office. Montgomery had already asked Daniel Hubbard, who worked

in a nearby office, if he would witness the signing of the will with her, and Hubbard had agreed. When the Gibbses arrived, Montgomery went out to the car with Hubbard and the will. Due to his illness, Gibbs Sr. did not want to get out of the car and go into Douglass's office. Both Hubbard and Montgomery knew Gibbs Sr. from previous encounters, and there was nothing in Gibbs Sr.'s speech or actions that led them to believe he was not of sound mind. Gibbs Sr. told Montgomery that "they'd waited until the last minute as usual to get things done." App. p. 74. Montgomery gave Gibbs Sr. the will; he briefly looked it over, then signed it. He also signed a self-proving clause at the end of the will. Montgomery and Hubbard then signed the will and self-proving clause as witnesses.

Gibbs Sr. went on to his doctor's appointment. The doctor's notes for that visit discuss his lung condition in great detail, including that recently "his oxygen saturation was only about 82% on room air...." *Id.* at 118. However, the notes make no mention of Gibbs Sr. appearing to suffer from any kind of dementia; rather, the notes twice refer to Gibbs Sr. as a "pleasant" person and seem to indicate that Gibbs Sr. was perfectly capable of discussing his medical issues with the doctor. *Id.* at 118, 120. Gibbs Sr. was not hospitalized after this appointment.

On the next day, Gibbs Sr. went back to Douglass's office to pick up a copy of the will. This time, Gibbs Sr. was able to walk into the office and spoke briefly with Montgomery. He thanked her for putting the will together on short notice and said that the reason he had left the Granddaughters out of the will was that he had already given his daughter substantial assets before she died.

Gibbs Sr.'s health rapidly deteriorated, and he died on January 8, 2010. On Janu-

ary 15, 2010, Gibbs Jr., as personal representative of his father's estate and executor of his will, filed a petition to open an unsupervised estate. On February 4, 2010, the Granddaughters filed a complaint to contest the will, which they amended on April 15, 2010. The Granddaughters subsequently moved for summary judgment, and Gibbs Jr. responded with a cross-motion for summary judgment. On October 13, 2010, the trial court denied the Granddaughters' motion for summary judgment and granted Gibbs Jr.'s motion. The Granddaughters now appeal.

## Analysis

We apply the same standard as the trial court when reviewing a grant of summary judgment. *Kroger Co. v. Plonski,* 930 N.E.2d 1, 4–5 (Ind.2010). Namely, summary judgment should be granted only if the designated evidence shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Id.* at 5. "All factual inferences must be construed in favor of the nonmoving party, and all doubts as to the existence of a material issue must be resolved against the moving party." *Id.* Additionally, the existence of cross-motions for summary judgment does not alter our standard of review. *Grinnell Mut. Reins. Co. v. Ault,* 918 N.E.2d 619, 625 (Ind.Ct. App.2009).

### I. Self–Proving Clause

■ We first address the Granddaughters' contention that it is "undisputed" that Gibbs Sr. did not properly publish his will at the time he signed it. Appellant's Br. p. 15. Publication of a will is the testator's act of making it known in the presence of witnesses that the instrument to be signed is the testator's last will and testament. *Callaway v. Callaway,* 932 N.E.2d 215, 220 (Ind.Ct.App.2010). The purpose of publication is to ensure that the witnesses are aware that the testator

knows he or she is about to execute a will, in order to lessen the likelihood of fraud. *Id.* at 220–21. Sufficient publication may occur if a testator signs a will after another person has referred to it as the testator's will in the testator's presence. *Arnold v. Parry*, 173 Ind.App. 300, 310, 363 N.E.2d 1055, 1061 (1977). The publication requirement is embodied in the following section of the Probate Code:

> The testator, in the presence of two (2) or more attesting witnesses, shall signify to the witnesses that the instrument is the testator's will and either:
>
> (A) sign the will;
>
> (B) acknowledge the testator's signature already made; or
>
> (C) at the testator's direction and in the testator's presence have someone else sign the testator's name.

Ind.Code § 29–1–5–3(b)(1).

The Granddaughters' assertion that it is "undisputed" Gibbs Sr. did not properly publish his will comes from the deposition testimony of Montgomery and Hubbard. In their depositions, Montgomery and Hubbard indicated that they both believed Gibbs Sr. knew he was signing his will. However, when pressed for details, neither witness to the will could recall Gibbs Sr. ever expressly stating that it was his will; neither is there evidence that anyone else referred to the document as Gibbs Sr.'s Will in his presence before he signed it.

■ The Granddaughters' argument that there is "undisputed" evidence of a failure to publish overlooks the self-proving clause, attached to the end of the will, that Gibbs Sr., Montgomery, and Hubbard signed. That clause states:

> The foregoing instrument, consisting of this and two preceding typewritten pages, was signed, published, and declared by Wilgus Gibbs, the Testator, to be his Last Will and Testament. In our presence, he signed each of the pages for better identification. We then at his request and in his presence, and in the presence of each other, signed our names as witnesses to the same.
>
> UNDER PENALTIES FOR PERJURY, we, the undersigned Testator and the undersigned witnesses declare:
>
> (1) That the Testator executed the instrument as his Will;
>
> (2) That, in the presence of both witnesses, the Testator signed and acknowledged his signature;
>
> (3) That the Testator executed the Will as his free and voluntary act for the purposes expressed in it;
>
> (4) That each of the witnesses, in the presence of the Testator and of each other, signed the Will as witnesses;
>
> (5) That the Testator was of sound mind; and
>
> (6) That to the best of their knowledge the Testator was at the time eighteen (18) years or more of age.

Appellee's App. p. 12. Points one through six of this clause track the statutory language governing self-proving will clauses found in Indiana Code Section 29–1–5–3.1(c).[1] Subsection (1) of both the clause

---

1. The statute states:

A self-proving clause must contain the acknowledgment of the will by the testator and the statements of the witnesses, each made under the laws of Indiana and evidenced by the signatures of the testator and witnesses (which may be made under the penalties for perjury) attached or annexed to the will in form and content substantially as follows:

We, the undersigned testator and the undersigned witnesses, respectively, whose names are signed to the attached or foregoing instrument declare:

(1) that the testator executed the instrument as the testator's will;

and the statute clearly allow the fact of publication of a will to be self-proven. In addition, the opening paragraph of the specific self-proving clause in this case expressly states that Gibbs Sr. had in fact published his will. The self-proving clause is itself evidence that Gibbs Sr. published his will.

■ The question is what evidentiary effect the self-proving clause has, in the context of a summary judgment motion, with respect to Montgomery and Hubbard's later inability to recall a specific instance in which Gibbs Sr. actually "published" his will. There are cases in Indiana holding that, where there are inconsistencies between a self-proving or attestation clause to a will and subsequent testimony of the witnesses who signed such a clause, it is for a fact-finder to resolve such discrepancies. *See Callaway*, 932 N.E.2d at 222; *Fitch v. Maesch*, 690 N.E.2d 350, 354 (Ind.Ct.App.1998), *trans. denied*; *Munster v. Marcrum*, 182 Ind. App. 20, 23, 393 N.E.2d 256, 258 (1979). In *Fitch*, in particular, a subscribing witness "lack[ed] memory as to aspects of the execution of the contested will. . . ." *Fitch*, 690 N.E.2d at 353. However, none of these cases were resolved on summary judgment and instead were cases where the fact-finder credited the truth of attestation and/or self-proving clauses as opposed to contrary or vague testimony by the witnesses. Thus, they are of limited relevance in addressing the question before us; namely, the question was not

(2) that, in the presence of both witnesses, the testator signed or acknowledged the *signature already made or directed another* to sign for the testator in the testator's presence;
(3) that the testator executed the will as a free and voluntary act for the purposes expressed in it;
(4) that each of the witnesses, in the presence of the testator and of each other, signed the will as a witness;

presented in those cases as to whether they *could* have been resolved by summary judgment.

■ Indiana Code Section 29–1–7–13(c) states:

If the will is self-proved, compliance with signature requirements for execution and other requirements of execution are presumed subject to rebuttal without the testimony of any witness upon filing the will and the acknowledgment and verifications annexed or attached to the will, unless there is proof of fraud or forgery affecting the acknowledgment or verification.

Thus, a self-proving clause creates a rebuttable presumption that the will was properly executed; publication of a will is one of the aspects of its execution. *See* Henry's Indiana Probate Law & Practice § 29.03 (2010) (noting that proper execution of a will requires a writing, a signature, acknowledgment, publication, presence, and attestation by capable witnesses). With respect to rebuttable presumptions generally, "Unless the opponent of the presumption presents evidence tending to disprove the presumed fact, the party in whose favor the presumption operates is entitled to judgment on that issue." *Schultz v. Ford Motor Co.*, 857 N.E.2d 977, 985 (Ind.2006).

Here, Hubbard testified during his deposition as follows:

(5) that the testator was of sound mind when the will was executed; and
(6) *that to the best knowledge of each of* the witnesses the testator was, at the time the will was executed, at least eighteen (18) years of age or was a member of the armed forces or of the merchant marine of the United States or its allies.
I.C. § 29–1–5–3.1(c).

Q: Okay. Did [Gibbs Sr.] indicate to you that this was his will?

A: Yes.

Q: And how did he do that?

A: And I'm just trying to think through the events that day. I guess I can't really—I don't know—I mean I know he was looking at the document as—

Q: And my question is not whether or not you knew what the document was. My question was did he indicate to you what this—that he knew what this document was?

A: I honestly can't recall.

Appellee's App. p. 47.

Similarly, Montgomery testified during her deposition as follows:

Q: .... So did Mr. Gibbs Sr. actually signify to you that he knew that this was his last will and testament?

A: I'm trying to think if he actually specifically said, "This is my will that I'm signing," but I don't think he said it like that. I mean he knew it was his will.

Q: So he didn't then?

A: Did not specifically say, "This is my will."

Q: Did he indicate in any other way?

A: I don't know.

*Id.* at 91. Thus, both witnesses expressed their clear belief that Gibbs Sr. knew he was signing his will, which is the foundation of the publication requirement, but could not provide particulars as to what led them to that belief.

■ We conclude that this uncertainty or lack of memory as to the particulars of the will execution ceremony is insufficient

as a matter of law to overcome the presumption, provided by the self-proving clause, that the will was properly executed. We first note that both of the statutes governing will executions generally and self-proving clauses in particular state that they "shall be construed in favor of effectuating the testator's intent to make a valid will." I.C. §§ 29–1–5–3(e), 29–1–5–3.1(e). This language, added by the legislature in 2003, is a strong indicator of legislative intent that a validly-signed will, accompanied by a validly-signed self-proving clause,[2] should not be lightly set aside. As our supreme court has implied, this new language is indicative of "a consistent legislative intent to simplify this process and eliminate unnecessary procedures." *Estate of Dellinger v. 1st Source Bank,* 793 N.E.2d 1041, 1045 (Ind.2003).

The Appellate Court of Illinois addressed a scenario similar to the present one in *In re Russell's Estate,* 130 Ill. App.2d 839, 264 N.E.2d 269 (1970). There, two of three witnesses to a will[3] gave testimony several years after the will had been executed indicating that they could not remember the particulars of the will's execution, including whether the testator had been of sound mind when the will was executed as the witnesses had indicated in the attestation clause. Upon hearing this testimony, the trial court denied probate of the will.

The Appellate Court reversed and held that the will must be probated, despite the witnesses' testimony. It noted that the most that could be inferred from that testimony was that the witnesses had no independent memory of whether the testator was of sound mind when the will was attested to. *Id.* at 272. The court held that this was insufficient to rebut the pre-

---

**2.** There is no evidence or accusation that Gibbs Sr., Hubbard, and Montgomery did not actually sign the will and self-proving clause.

**3.** The third witness was dead when the will was probated.

sumption of due execution of the will, as reflected by the attestation clause. *Id.* In reaching this conclusion, the court quoted the following from the Illinois Supreme Court:

> The probate of a will cannot be made to depend upon the recollection or veracity of subscribing witnesses, for if it were necessary for them to remember and testify to the fact that all the prescribed formalities were in fact complied with very few wills could be upheld. The law wisely requires such instruments to be executed and attested with precautions which will usually guard against fraud, and if the attestation clause shows on its face that all the forms required by law have been met, and the signatures on the instrument are admittedly genuine, the presumption of due execution must prevail unless clear and affirmative proof shows the contrary. If it is merely doubtful from the evidence whether the requirements have been complied with, the presumption arising from the attestation clause is not overcome.

*Id.* at 271–72 (quoting *Conway v. Conway*, 14 Ill.2d 461, 153 N.E.2d 11, 14 (1958)).

█ We conclude that the holdings of *Russell* and *Conway* are sound, and properly reflect the weight that our legislature intended self-proving clauses to have when determining the validity of a will. The failure of witnesses to a will to remember everything that was said when the will was executed is insufficient as a matter of law to overcome the presumption of regularity reflected by a self-proving clause, where there is no doubt as to the genuineness of the signatures on it. To hold otherwise would defeat the very purpose of having self-proving clauses and the presumption that they establish the validity of a will's execution and, as feared by the *Conway* court, could open up a large number of wills to challenges based on the faulty memory of witnesses. If there is in fact positive evidence that a testator did not know he or she was signing a will, as opposed to witnesses merely being unable to remember whether the testator expressly said he or she was signing a will, that fact may be sufficient to defeat the presumption of regularity provided by a self-proving clause. *See Matter of Jacobson's Estate,* 75 Ill.App.3d 102, 30 Ill.Dec. 722, 393 N.E.2d 1069, 1072 (1979) (distinguishing *Russell* where two witnesses expressly stated that they did not believe testator was of sound mind when will was signed, instead of merely stating that they could not recollect the details of the will's execution).

The bottom line here is that when Gibbs Sr. signed the will, neither Montgomery nor Hubbard seemed to have any hesitation that Gibbs Sr. knew precisely what he was signing and what he was doing. Several months after the fact they were unable to recall precise details as to what led them to that conclusion. In our view, that is insufficient to overcome the presumption of regularity in the execution of the will that arose as a result of the signing of the self-proving clause.[4]

If either Hubbard or Montgomery had later expressed doubt that Gibbs Sr. knew he was signing his will, or there was other evidence that he did not know what he was signing, the result in this case might be different. The designated evidence fails to reveal any such doubts or any such evi-

---

4. There is no evidence that Gibbs Sr. could not, did not, or was not able to read the document, or that he did not realize that it was his will. The Granddaughters do contend that there is evidence Gibbs Sr. did not take very long to read over the will; however, we note that the substance of the will consisted of only one full page. That Gibbs Sr. may have rapidly read over the will does not mean that he did not realize he was signing his will.

dence. The Granddaughters have failed to rebut the presumption of regularity in the execution of Gibbs Sr.'s Will that is established by the self-proving clause. The trial court properly granted summary judgment in Gibbs Jr.'s favor on this issue.

## II. Other Challenges to Will [5]

### A. Undue Influence

 We next address the Granddaughters' contention that there is evidence Gibbs Jr. exerted undue influence over Gibbs Sr. with respect to executing the will naming Gibbs Jr. as sole devisee. Undue influence is the exercise of such control by one person over another person so as to destroy his or her free agency and compel him or her to do something he or she would not have done if such control had not been exercised. *Carlson v. Warren,* 878 N.E.2d 844, 851 (Ind.Ct.App. 2007). Such control may result from the abuse of a relationship in which confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Id.*

 Under Indiana law, a confidential relationship sufficient to support an undue influence claim may arise either as a matter of law or may arise under the particular facts of a case. *Id.* We have termed the first type of relationship a "confidential relationship as a matter of law," and the second type a "confidential relationship in fact." *Id.* at 851 n. 3. Confidential relationships as a matter of law include relationships such as attorney-at-law and client, attorney-in-fact and the one granting the power of attorney, guardian and ward, principal and agent, pastor and parishioner, and parent and child. *Id.* With respect to parent-child relationships, the parent generally is considered the

dominant party. *See Supervised Estate of Allender v. Allender,* 833 N.E.2d 529, 533 (Ind.Ct.App.2005), *trans. denied.* Where a confidential relationship as a matter of law exists and the fiduciary (or dominant party) benefits from a questioned transaction, a presumption of undue influence arises and the fiduciary bears the burden of rebutting that presumption. *Carlson,* 878 N.E.2d at 851. The presumption may be rebutted by clear and convincing evidence that the fiduciary acted in good faith, did not take advantage of the position of trust, and that the transaction was fair and equitable. *Id.*

 Where there is no confidential relationship as a matter of law, the evidence in a given case may show a relationship of trust and confidence that would have justified one in relying upon that relationship. *Id.* at 852. Instead of creating a rebuttable presumption of undue influence, the plaintiff in such a case bears the burden of establishing not only the existence of a confidential relationship in fact between the parties but also to prove that the parties to the challenged transaction did not deal on terms of equality. *Id.* "The plaintiff 'must prove either the dominant party dealt with superior knowledge of the matter derived from a fiduciary relationship, or dealt from a position of overpowering influence as to the subordinate party.' " *Id.* (quoting *Lucas v. Frazee,* 471 N.E.2d 1163, 1166 (Ind.Ct.App. 1984)). If a plaintiff meets this initial burden and shows that the dominant party received an unfair advantage in a challenged transaction, then the defendant has an affirmative duty to show that " 'no deception was practiced, no undue influence was used, and all was fair, open, voluntary,

---

5. Although the Granddaughters asserted in their complaint that Gibbs Sr. lacked testamentary capacity when he executed his will, they have not developed such an argument on appeal.

and well understood.'" *Id.* (quoting *Lucas*, 471 N.E.2d at 1166).

■ Here, the Granddaughters failed to designate any evidence that there was a confidential relationship as a matter of law between Gibbs Sr. and Gibbs Jr. that would make Gibbs Jr. the dominant party or fiduciary. As Gibbs Jr.'s father, Gibbs Sr. occupied the traditional position of dominance between the two. Unlike in some cases involving elderly parents and their children, Gibbs Jr. was never named Gibbs Sr.'s attorney-in-fact. We conclude the Granddaughters have failed to establish that Gibbs Sr. and Gibbs Jr. had a confidential relationship as a matter of law, at least with respect to Gibbs Jr. being the dominant party.

■ We now address whether there is any evidence that Gibbs Sr. and Gibbs Jr. had a confidential relationship in fact. On occasion, we have held that the traditional parent-child relationship may be reversed, placing the child in the dominant position, if there is evidence that the child has become the parent's "caretaker." *See Meyer v. Wright*, 854 N.E.2d 57, 60 (Ind. Ct.App.2006), *trans. denied.* Here, however, there is no designated evidence that Gibbs Jr. had become Gibbs Sr.'s "caretaker." Despite the Granddaughters' implied claim to the contrary, which they expressly made to the trial court, there is no evidence in the record that Gibbs Sr. suffered from any dementia or mental infirmness at any time before his death, and certainly not when he signed his will. The Granddaughters mention a notation in Gibbs Sr.'s medical records that his blood oxygen level recently had been measured at 82%, and seem to suggest this by itself could be evidence of mental infirmity. But there is absolutely no evidence in the record, expert or otherwise, to support such a conclusion. Instead, when Gibbs Sr. visited the doctor on December 29, 2009, shortly after signing the will, the doctor's notes give no indication whatsoever that Gibbs Sr. was mentally infirm. Hubbard and Montgomery, who knew Gibbs Sr. from previous encounters, also had no doubts that Gibbs Sr. was of sound mind when he signed the will.

As for Gibbs Sr.'s decision to leave the entirety of his estate to Gibbs Jr., rather than making some provision for the Granddaughters, Gibbs Sr. explained to Montgomery that he did so because he had already given substantial assets to his daughter, the Granddaughters' mother, during her lifetime. In sum, there is no designated evidence suggesting that Gibbs Jr. enjoyed a dominant position over Gibbs Sr. or exercised undue influence over Gibbs Sr. *See Carlson*, 878 N.E.2d at 852–53 (holding plaintiffs failed to submit evidence of a confidential relationship in fact sufficient to survive summary judgment). To hold otherwise would effectively call into question every will in which an ailing, elderly parent decides to make a substantial bequest to a child whom he or she loves and who had provided some assistance to the parent in his or her old age. We decline to do so. "Unnecessary restraints should not be placed upon such elderly citizens in reference to their legal transactions, nor should unwarranted interference be countenanced." *Baker v. Whittaker*, 133 Ind.App. 347, 360, 182 N.E.2d 442, 448 (1962). The trial court properly granted summary judgment to Gibbs Jr. on the issue of undue influence.

### B. Mistake and/or Fraud

■ Finally, the Granddaughters argue that Gibbs Sr.'s Will was the result of mistake or fraud. However, they fail to cite any relevant legal authority on the issues of mistake or fraud. This constitutes waiver of their arguments on this issue. *See Kentucky Nat'l Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d

565, 598 (Ind.Ct.App.2010). Furthermore, their argument appears to rely at least in part upon evidence that was not designated to the trial court as part of the summary judgment motions.[6] We cannot consider evidence not designated to the trial court in reviewing its summary judgment ruling. *See Thomas v. North Cent. Roofing,* 795 N.E.2d 1068, 1071 (Ind.Ct.App. 2003). We will not further address the Granddaughters' argument regarding mistake or fraud.

### Conclusion

As a matter of law, the Granddaughters have failed to designate evidence sufficient to overcome the presumption, provided by the self-proving clause, that Gibbs Sr.'s Will was validly executed. The Granddaughters also have failed to designate any evidence that could support their claim of undue influence. We affirm the trial court's grant of summary judgment in favor of Gibbs Jr.

Affirmed.

RILEY, J., and DARDEN, J., concur.

---

6. We have, by separate order, granted Gibbs Jr.'s motion to strike portions of the Grand- daughters' appendix that contained evidence that was not designated to the trial court.