**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**JEFFRY G. PRICE**
Peru, Indiana

ATTORNEYS FOR APPELLEE:

**THOMAS M. BEEMAN**
**KYLE B. DEHAVEN**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| GUARDIANSHIP OF PHYLLIS D. HAYES, AN ADULT, | ) |
| | ) |
| JOANN HAYES and DIANNA HALE, | ) |
| | ) |
| Appellants, | ) |
| | ) |
| vs. | ) No. 52A02-1308-GU-751 |
| | ) |
| KENNETH J. HAYES, | ) |
| | ) |
| Appellee. | ) |

APPEAL FROM THE MIAMI SUPERIOR COURT
The Honorable J. David Grund, Judge
Cause No. 52D01-1003-GU-3

**May 29, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Jo Ann Hayes and Dianna Hale appeal the trial court's denial of their motion for summary judgment and the trial court's order concluding that the execution of an option contract by their mother, Phyllis Hayes, to their brother, Kenneth Hayes, was enforceable. We affirm.

**Issues**

Jo Ann and Dianna raise two issues, which we restate as:

    I.     whether the trial court properly denied their motion for summary judgment because the sale was subject to trial court approval; and

    II.    whether, after a hearing, the trial court properly ordered the execution of the option contract because it was not the result of undue influence.

**Facts**

Phyllis and her husband owned a 200-acre farm in Miami County. Prior to passing away in 1993, Phyllis's husband farmed the land with the couple's son, Kenneth. Jo Ann and Dianna are Kenneth's sisters. Kenneth and his family lived in one house on the farm, and Phyllis and her husband lived in another house on the farm. In the mid-1980s, Kenneth loaned his parents $179,539.80 to support the farm.

In 1997, Phyllis gave Kenneth the authority to act as her power of attorney. On March 3, 2005, Phyllis executed a promissory note, mortgage, will, and an option contract as part of her estate plan created by attorney Joseph Certain. Certain created the documents pursuant to Phyllis's request and videotaped Phyllis on March 3, 2005, explaining why she set up her estate plan the way she did.

2

The promissory note and mortgage were in favor of Kenneth in the amount of $180,000. The option contract allowed Kenneth to purchase the 200-acre farm at $2,500 per acre, for a total purchase price of $500,000, which was a reasonable fair market price at that time. Pursuant to the terms of the option contract, Kenneth could exercise the option to purchase through September 1, 2014, and, upon expiration of the initial option period, it could be renewed for another ten years. The option contract also specified that Kenneth was owed $180,000 and that, should he exercise the option, any unpaid balance of the promissory note should be credited toward the $500,000 purchase price.

In January 2010, Kenneth told Jo Ann and Dianna that he intended to purchase the farm, and he later executed a letter of his intent to exercise the option. In March 2010, Jo Ann and Dianna petitioned for the appointment of a guardian over Phyllis's person and estate. Kenneth was the appointed as the guardian over Phyllis's person and a bank was appointed as the guardian over the estate. Litigation ensued regarding the sale of the farm to Kenneth pursuant to the terms of the option contract. Jo Ann and Dianna's expert valued the farm at $8,000 to $10,000 per acre.

Eventually, Kenneth moved for summary judgment arguing that the option contract was valid and binding. Jo Ann and Dianna also moved for summary judgment arguing that there were no genuine issues of material fact and that the sale was void as a matter of law. The trial court denied both motions. The trial court rejected Jo Ann and Dianna's request to certify the denial of their motion for summary judgment for interlocutory appeal, and a fact-finding hearing was held.

Jo Ann and Dianna requested special findings and conclusions, and the parties submitted proposed findings to the trial court. The trial court largely adopted Kenneth's proposed findings and conclusions and ordered the sale of the farm pursuant to the option contract. In its order, the trial found in part:

> 7. That there was no evidence that [Kenneth] ever acted under the authority of the Power of Attorney prior to 2006;
>
> * * * * *
>
> 10. That [Phyllis] had been consulting her attorney Joseph Certain in the months leading up to March 3, 2005;
>
> * * * * *
>
> 17. That [Kenneth] was not present when the contract was discussed, created, or executed by [Phyllis];
>
> 18. That [Phyllis] created the option contract with the assistance and advice of her attorney;
>
> 19. That the option contract was consistent with her overall estate plan as well as the wishes of her late husband as testified to by her attorney Mr. Certain;
>
> 20 That, according to Mr. Certain, precautions were taken to insure, in his mind that [Phyllis] knew the gravity of the option contract.
>
> 21. That, according to Mr. Certain, and in his legal opinion, [Phyllis] was legally competent to execute the option contract and was not under any undue influence;
>
> 22. That Shirley Ball was employed by Joseph Certain and his firm as a legal assistant;
>
> * * * * *
>
> 27. That Mrs. Ball had the opportunity to engage [Phyllis] in conversation on March 3, 2005;

4

28.    That Mrs. Ball's opinion and observations were that [Phyllis] was appropriate in conversation and immaculately dressed for the occasion;

29.    That Mrs. Ball's observations were that [Phyllis] was very sure of herself and her reasons for the content of the option contract and the other documents executed on March 3, 2005;

30.    That [Phyllis] had a personal physician by the name of William Rauh;

\* \* \* \* \*

34.    That Dr. Rauh testified that there [sic] [Phyllis] did not suffer from any physical or mental condition that would impede her ability to conduct her affairs on or before March 3, 2005;

35.    That based on the testimony of Mr. Certain, Mrs. Ball and Dr. Rauh, [Phyllis] was mentally competent to enter into the option contract created on March 3, 2005;

36.    That it was not until October 20, 2011 that Dr. Rauh determined [Phyllis] to be incompetent;

37.    That [sic] amount of the purchase ($2,500.00/acre) was a reasonable fair market price on the date the contract was created as evidence by expert Larry Jordan;

38.    That Larry Jordan is an agriculture real estate expert familiar with the past and current value of farmland;

39.    That Larry Jordan testified that the price per acre contained in the contract was fair at the time the contract was created;

40.    That Mr. Jordan testified that agricultural real estate has significantly increased in value since 2005;

5

41.    That Mr. Jordan testified no one could have anticipated the substantial increase in agricultural real estate including experts like himself;

42.    That, if experts could not anticipate the substantial increase in the value of agricultural real estate, [Phyllis] and [Kenneth] could not have been able to foresee such increases in value;

43.    That Mr. Jordan testified that the increase in the value of agricultural real estate can, in part, be credited to the role that ethanol has played in the U.S. economy[.]

App. pp. 32-35.  The trial court entered extensive conclusions, which it summarized as:

In conclusion, the Court finds that the option is valid and binding.  [Phyllis] was competent at the time of the execution of the contract.  The elements of a valid contract are present and were present at the time of the execution.  The contract contained a legal offer and acceptance and is supported by sufficient consideration.  Furthermore, the parties exhibited a manifestation of mutual consent.

The Court further finds that [Kenneth] did not exert undue influence over [Phyllis] and any presumption has been overcome by the evidence.  While the Court does not believe that the sale of [Phyllis's] property at the price contained within the option agreement is necessarily in her best interest at this time due to the substantial increase in property value, the court cannot legally find that the Option Agreement executed March 3, 2005 is not a valid and binding contract.

The most telling evidence being that of Mr. Jordan, the land valuation expert, who testified that the price of $2500.00 per acre was market value on or about March 3, 2005.  This along with the video of [Phyllis's] will being executed on March 3, 2005 wherein she appears competent, details her estate plan, the reasons therefore and specifically states that [Kenneth] has exerted no undue influence on her regarding the transactions.  The Court must enforce the legal and binding agreement of the parties and hereby orders that the

6

> Option Contract be fully and completely executed with a purchase price of $2,500.00 per acre . . . .[1]

Id. at pp. 41-42. Jo Ann and Dianna now appeal.

## Analysis

### *I. Denial of Summary Judgment*

Jo Ann and Dianna argue that the trial court improperly denied their motion for summary judgment. "We review an appeal of a trial court's ruling on a motion for summary judgment using the same standard applicable to the trial court." Perdue v. Gargano, 964 N.E.2d 825, 831 (Ind. 2012). "Therefore, summary judgment is appropriate only if the designated evidence reveals 'no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting Ind. Trial Rule 56(C)). Our review of summary judgment is limited to evidence designated to the trial court. Id. (citing T.R. 56(H)). All facts and reasonable inferences drawn from the evidence designated by the parties is construed in a light most favorable to the non-moving party, and we do not defer to the trial court's legal determinations. Id.

Jo Ann and Dianna argue they were entitled summary judgment because they established that the sale from Phyllis to Kenneth is void as a matter of law and Kenneth

---

[1] Although many of the trial court's findings and conclusions mirror Kenneth's proposed findings and conclusions, the trial court did not adopt Kenneth's findings and conclusions verbatim. For example, the last two—and most significant—paragraphs of the trial court's order were not included in Kenneth's proposed findings. Jo Ann and Dianna's concerns about the trial court's verbatim adoption of Kenneth's proposed findings and conclusions are not well founded.

7

did not specify a material issue of fact to be resolved by the fact-finder.[2]  Jo Ann and

Dianna rely on Indiana Code Section 29-3-8-5(a), which provides:

> Any:
>
>> (1) sale or encumbrance of any part of the property of a protected person to a guardian or guardian's spouse, agent, attorney, or any corporation, trust, or other organization in which the guardian has a substantial beneficial interest; or
>>
>> (2) other transaction involving the property that is affected by a substantial conflict between the interest of the protected person and the guardian's personal interest;
>
> is void unless approved by the court.

Assuming this statute encompasses the sale of the farm pursuant to the 2005

option contract,[3] the statute specifically says that a sale of a protected person's property to

---

[2]  Although Jo Ann and Dianna argued that the option contract is void as a matter of law in their motion for summary judgment, their memorandum in support of summary judgment and arguments on appeal are based on the sale being void because it will occur during the guardianship.  Thus, our review of the denial of Jo Ann and Dianna's motion for summary judgment is based on whether the sale is void as a matter of law.

[3]  In response to Jo Ann and Dianna's motion for summary judgment, Kenneth argued that Indiana Code Section 29-3-8-5 did not apply because Kenneth was not Phyllis's guardian and Phyllis was not a protected person when she made the sale available to Kenneth in 2005.  In his Appellee's Brief, Kenneth specifically cites Indiana Code Section 29-3-8-7, which provides:

> If the court finds that:
>
>> (1) an incapacitated person who is a protected person did, before the person became an incapacitated person, enter into a written contract, including a contract for the sale, division, or other disposition of property;
>>
>> (2) the obligations of the contract have not been fully carried out; and

8

the guardian "is void <u>unless approved by the court</u>." Ind. Code § 29-3-8-5(a) (emphasis added). Because the sale of the farm was subject to the trial court's approval, the sale is not void as a matter of law.[4]

As for Jo Ann and Dianna's concerns that the sale is void because Indiana Code Section 29-3-8-5(a) provides no guidance as to what standard applies in approving a sale, we believe that the Legislature has left such a determination to the trial court's broad discretion. See I.C. § 29-3-2-4(a) ("All findings, orders, or other proceedings under this article shall be in the discretion of the court unless otherwise provided in this article."). Also, we cannot agree with Jo Ann and Dianna's assertion that voiding the sale is consistent with the statute's history. Although Indiana Code Section 29-3-8-5(a) previously did not include the "unless approved by the court" language, in 2005, the Legislature amended the statute to include that phrase. See P.L. 238-2005 §15. This shows a clear legislative intent to allow trial courts to approve transactions involving the sale or encumbrance of a protected person's property to a guardian. See <u>United Nat. Ins.</u>

---

(3) the contract was a good and binding contract at the time of the making of the contract;

the court shall authorize the guardian of the protected person to perform the contract without notice or hearing unless otherwise ordered by the court.

Given that the trial court has already conducted a hearing and approved the sale, we need not determine whether the trial court should have authorized the bank, as the guardian over Phyllis's estate, to perform the contract without notice or a hearing.

[4] In their reply brief, Jo Ann and Dianna appear to assert that, pursuant to Indiana Code Section 29-3-8-5(a), the sale is presumed to be void and to avoid summary judgment Kenneth had the burden of offering reasons why the trial court should approve the sale. To the extent this presumption and burden shifting approach are proper and timely raised, Kenneth's assertions that he was not Phyllis's guardian and that Phyllis was not a protected person when she executed the option contract were sufficient reasons for the trial court to deny summary judgment and hold a hearing to determine the propriety of the sale.

9

Co. v. DePrizio, 705 N.E.2d 455, 460 (Ind. 1999) ("A fundamental rule of statutory construction is that an amendment changing a prior statute indicates a legislative intention that the meaning of the statute has changed.").

Because the sale of the farm was subject to trial court approval, it was not void as a matter of law. The trial court properly denied Jo Ann and Dianna's motion for summary judgment and held a hearing to determine the propriety of the sale of the farm from Phyllis to Kenneth pursuant to the terms of the 2005 option contract.

## II. Undue Influence

Jo Ann and Dianna argue that the option contract is not enforceable because Kenneth did not rebut the presumption of undue influence. In the review of claims tried without a jury, the findings and judgment are not to be set aside unless clearly erroneous, and due regard is to be given to the trial court's ability to assess the credibility of the witnesses. Fraley v. Minger, 829 N.E.2d 476, 482 (Ind. 2005) (citing Ind. Trial Rule 52(A)). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment and when the trial court applies the wrong legal standard to properly found facts. Id. "While findings of fact are reviewed under the clearly erroneous standard, appellate courts do not defer to conclusions of law, which are reviewed de novo." Id. To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. Id.

### A. Burden of Proof

In addressing Jo Ann and Dianna's allegations that Kenneth, by virtue of the 1997 power of attorney, unduly influenced Phyllis when she executed the option contract in 2005, the trial concluded in part:

> The facts support the conclusion that [Phyllis] was not in a condition that would have allowed anyone to destroy her free agency and constrain her to do what she would not have done, but for the undue influence. First, [Phyllis] was represented at all times on March 3, 2005 by her attorney, Mr. Certain. Mr. Certain testified that [Kenneth] was not present at [sic] prior to or at the time of execution of the of option contract. Mr. Certain also testified that he witnessed [Phyllis] arrive at his office by herself. Mr. Certain testified that he did not recall [Kenneth] being present at any of the previous appointments at which [Phyllis] discussed her estate plan.

> In addition, Mr. Certain explained that he has developed procedures to address the issue of undue influence. He explained that he and [Phyllis] discussed issues that would help him determine the presence of any undue influence and was satisfied that [Phyllis] was operating under her own free will.

> The court finds that a confidential relationship existed due to the presence of the 1997 power of attorney. However, the facts establish that [Kenneth] was not operating under the authority of the power of attorney on March 3, 2005. The Court further finds that the presumption of undue influence created by the existence of the power of attorney has been rebutted. The Court finds that [Phyllis] was acting under her own power and was on equal footing with Mr. Hayes. In fact, the Court finds that it would be reasonable to conclude that [Phyllis] was in a superior position due to the fact that she was represented by Counsel and [Kenneth] was not. The court finds that there was no undue influence exerted by [Kenneth] upon [Phyllis] and that the contract is valid and binding despite the presence of the power of attorney.

* * * * *

11

The Court further finds that [Kenneth] did not exert undue influence over [Phyllis] and any presumption has been overcome by the evidence. While the Court does not believe that the sale of [Phyllis's] property at the price contained within the option agreement is necessarily in her best interest at this time due to the substantial increase in property value, the court cannot legally find that the Option Agreement executed March 3, 2005 is not a valid and binding contract.

The most telling evidence being that of Mr. Jordan, the land valuation expert, who testified that the price of $2500.00 per acre was market value on or about March 3, 2005. This along with the video of [Phyllis's] will being executed on March 3, 2005 wherein she appears competent, details her estate plan, the reasons therefore and specifically states that [Kenneth] has exerted no undue influence on her regarding the transactions. . . .

App. pp. 39-42

Jo Ann and Dianna argue that the trial court did not clearly state the relevant standard of proof and erroneously relied on cases involving confidential relationships based on fact as opposed to confidential relationships based on law. In its order, the trial court cited Barkwill v. Cornelia H. Barkwill Revocable Trust, 902 N.E.2d 836 (Ind. Ct. App. 2009), trans. denied, and Carlson v. Warren, 878 N.E.2d 844 (Ind. Ct. App. 2007). Although both cases involved confidential relationships based on fact, both cases also discussed confidential relationships that arise as a matter of law and the respective burdens of proof.

In Carlson, we recognized that a power of attorney creates a confidential relationship as a matter of law.[5] Carlson, 878 N.E.2d at 852 n.4. When a confidential

<hr />

[5] In 2005, after the option contract was executed, Indiana Code Section 30-5-9-2 was amended to eliminate the presumption of invalidity of a gift, bequest, transfer, or transaction between the principal

12

relationship as a matter of law exists and the fiduciary benefits from a questioned transaction, there is presumption of undue influence, and the burden shifts to the fiduciary to rebut the presumption. Id. This presumption may be rebutted by establishing through clear and convincing evidence that the fiduciary acted in good faith, did not take advantage of the position of trust, and that the transaction was fair and equitable. Id.; see also Lucas v. Frazee, 471 N.E.2d 1163, 1167 (Ind. Ct. App. 1984) (explaining that to rebut the presumption the dominant party "must demonstrate the questioned transaction was in fact one had at arms length and thus valid.").

On the other hand, where a confidential relationship is based on the facts of a case, there is not a rebuttable presumption of undue influence. Carslon, 878 N.E.2d at 852. Instead, the burden is on the plaintiff to establish not only the existence of a confidential relationship in fact between the parties but also to prove that the parties to the questioned transaction did not deal on terms of equality. Id. Only when the plaintiff met this burden will the burden of proof shift to the defendant to show that "'no deception was practiced, no undue influence was used, and all was fair, open, voluntary, and well understood.'" Id. (quoting Lucas, 471 N.E.2d at 1167).

It is true that the trial court cited Carlson and described the burden shifting approach in a confidential relationship based on fact. However, Kenneth does not dispute the power of attorney created a confidential relationship, and the trial court specifically

and the attorney-in-fact if it is made by the principal and not the attorney-in-fact acting for the principal under the power of attorney. See In re Estate of Rickert, 934 N.E.2d 726, 730 (Ind. 2010). Given the timing of the amendment, Kenneth concedes it is inapplicable here.

13

acknowledged the two types of confidential relationships and found "that a confidential relationship existed due to the presence of the 1997 power of attorney." App. pp. 39-40. There is no indication that the trial court improperly placed the burden of establishing a confidential relationship on Jo Ann and Dianna.[6]

Thus, the issue is whether Kenneth rebutted the presumption of undue influence with clear and convincing evidence. Although Jo Ann and Dianna contend that Phyllis's estate plan was not "well understood" by Phyllis, this is an argument to reweigh the evidence, which we decline. The trial court's numerous findings, which were based on Phyllis's attorney's testimony and the video of Phyllis taken at the time the option contract was executed, support its conclusion that Kenneth did not unduly influence Phyllis. Further, any doubt as to whether the trial court held Kenneth to the higher standard of proof is eliminated by the trial court's conclusion "that it would be reasonable to conclude that [Phyllis] was in a superior position" because she was represented by counsel and Kenneth was not. App. p. 40. This is not a basis for reversing the trial court's order.

### B. Competency

In its order, the trial court determined whether the option was a valid contract and assessed Phyllis's competency when she executed the option contract. The trial court

---

[6] Jo Ann and Dianna take issue with the trial court's observation that Kenneth was not operating under the authority of the power of attorney when the option contract was signed. This does not suggest that the trial court was confused about the parties' burdens of proof. It was a valid observation that Kenneth did not execute the option contract to himself under the authority of the power of attorney and is consistent with the trial court's finding that Kenneth did not act under the authority of the power of attorney prior to 2006. See App. p. 32.

stated, "The test to determine a person's mental capacity to contract is whether the person was able to understand in a reasonable manner the nature and effect of his act." Id. at 34 (citing Gallagher v. Cent. Indiana Bank, N.A., 448 N.E.2d 304, 307 (Ind. Ct. App. 1983)). The trial court concluded, "The evidence establishes that [Phyllis] understood the nature and effect of her acts and also understood the terms and the reasons for the terms of the contract. The most compelling evidence comes from [Phyllis's] video testimony taken on March 3, 2005, the day of the execution of the contract." Id. at 36. The trial court also relied on the testimony of Phyllis's attorney, her attorney's assistant, and her physician to determine that Phyllis "was competent to enter into the contract" and "was able to understand the nature and effect of her actions and had a reasonable understanding of the terms of the contract." Id. at 38.

On appeal, Jo Ann and Dianna contend that the trial court misstated the competency analysis as it relates to undue influence and that the trial court should have applied the following standard in assessing Phyllis's competency:

> Courts may also take into account the fact that the subordinate party suffers from 'great mental weakness' in its determination that undue influence contributed to the transaction. Complete unsoundness of mind is not necessary to support a finding of undue influence; rather, weakness of mind when combined with other factors is sufficient.

Nichols v. Estate of Tyler, 910 N.E.2d 221, 229 (Ind. Ct. App. 2009).

Based on Kenneth's motion for summary judgment and the arguments by counsel at the hearing, it appears that the competency issue related to Phyllis's mental ability to contract, not whether she was unduly influenced by Kenneth. As such, the purported

misstatement of law does not establish that the trial court's order is clearly erroneous. Nevertheless, Jo Ann and Dianna's argument that their testimony at the hearing and the medical records demonstrated Phyllis suffered from great mental weakness when she executed the option contract is simply a request to reweigh the evidence, which we cannot do. The trial court's findings and conclusions about Phyllis's testimony and demeanor in the video and the testimony of the other witnesses do not support Jo Ann and Dianna's assertions that Phyllis suffered great mental weakness or was otherwise incompetent in 2005. This argument does not establish that the trial court's order was clearly erroneous.

### *C. Estate Plan*

Jo Ann and Dianna argue that the trial court failed to make findings regarding the mortgage, promissory note, option contract and will and how they related to Phyllis's estate plan. Jo Ann and Dianna assert "that their mother executed these documents believing that they would benefit Kenneth, and not herself." Id. at 27. As such, Jo Ann and Dianna contend Kenneth failed to overcome the presumption of undue influence by clear and convincing evidence.[7]

Jo Ann and Dianna are asking us to reweigh the evidence, which we cannot do. The estate plan documents were admitted into evidence along with Phyllis's attorney's testimony regarding the plan and a 1997 "Addendum and Agreement of Debt" between

---

[7] To the extent Jo Ann and Dianna challenge the trial court's evidentiary rulings during the cross-examination of Phyllis's attorney, this argument is not supported by citation to authority and is waived. Dickes v. Felger, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.); Ind. Appellate Rule 46(A)(8)(a).

16

Phyllis and Kenneth. This agreement indicated that Kenneth had loaned his father and Phyllis $179,539.80 for the operation of the farm in the mid-1980s and that no payments had been made on the debt.

Moreover, in the video, Phyllis described Kenneth as having "saved the farm" during a difficult time in the 1980s. Ex. 2(A) at 1:45. Phyllis also explained why she crafted the estate plan in the manner she did and stated that she wanted her bills, including the money she and her husband owed Kenneth, to be paid first. She also acknowledged that the estate plan called for Kenneth to receive more of her assets than her other children because she was repaying a debt to him. Finally, she indicated that Kenneth wanted an opportunity to buy the farm, which she thought was "reasonable" and consistent with her husband's wishes. Id. at 5:10. Jo Ann and Dianna simply have not shown that the manner in which the estate plan was crafted establishes that Kenneth failed to rebut the presumption of undue influence.

## Conclusion

Jo Ann and Dianna have not established that the trial court erroneously denied their motion for summary judgment or that the trial court's conclusion that Phyllis was not acting under undue influence when she executed the option contract was clearly erroneous. We affirm.

Affirmed.

BAKER, J., and CRONE, J., concur.