**FILED**

Jun 18 2019, 6:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Irving Marshall Pinkus
Pinkus & Pinkus
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Maggie L. Smith
Randall R. Riggs
Jeffrey J. Mortier
Blake N. Shelby
Frost Brown Todd LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joan Tutino,<br><br>*Appellant-Plaintiff,*<br><br>v.<br><br>Rohr-Indy Motors Inc d/b/a Bob Rohrman's Indy Honda and Bob Rohrman Honda Dealership, Service Department d/b/a Bob Rohrman Honda Service Department,<br><br>*Appellees-Defendants.* | June 18, 2019<br><br>Court of Appeals Case No. 18A-CT-2435<br><br>Appeal from the Marion Superior Court<br><br>The Honorable John F. Hanley, Judge<br><br>Trial Court Cause No. 49D11-1707-CT-26766 |

**Robb, Judge.**

# Case Summary and Issue

[1] In January 2015, Joan Tutino's 2004 Honda CR-V was serviced by Bob Rohrman Indy Honda for a recall related to the vehicle's airbag. In July 2015, Tutino was injured in a four-car crash in which her driver's side airbag failed to deploy. Tutino filed a complaint for damages against Rohr-Motors, Inc. d/b/a Bob Rohrman's Indy Honda, and Bob Rohrman Honda Dealership Service Department d/b/a Bob Rohrman Honda Service Department (collectively, "Rohrman") alleging that Rohrman negligently serviced her vehicle resulting in the airbag failing to deploy and that Rohrman failed to notify her the airbag was defective prior to the accident. The trial court granted Rohrman's motion for summary judgment. Tutino now appeals the trial court's grant of Rohrman's motion for summary judgment, raising the following issue for our review: whether the designated evidence created a genuine issue of material fact that precluded judgment as a matter of law for Rohrman. Concluding any issues of fact are not material to the resolution of this case and that Rohrman was entitled to summary judgment, we affirm.

# Facts and Procedural History

[2] In September 2014, Honda Motor Company by its United States agent American Honda Motor Co., Inc. (collectively, "American Honda"), issued a recall notice and service bulletin regarding airbags manufactured by Takata and

installed as replacement parts in Honda vehicles.[1]  The recall notice informed

Honda owners of the following:

> What is the reason for this notice?
> Honda has decided that a defect related to motor vehicle safety
> exists in certain . . . 2002-2004 CR-V vehicles.  In some vehicles,
> the driver's airbag inflator could produce excessive internal
> pressure.  If an affected airbag deploys, the increased internal
> pressure may cause the inflator to rupture.  Metal fragments
> could pass through the airbag cushion material possibly causing
> injury or fatality to vehicle occupants.

> What should you do?
> Call any authorized Honda dealer and make an appointment to
> have your vehicle inspected.  The dealer will inspect and, if
> necessary, replace the driver's airbag inflator.

Appellant's Appendix, Volume 2 at 175 (example of customer letter).  The

service bulletin informed authorized dealers that "[a] small number of airbag

modules with defective inflators were sold as replacement parts to replace

deployed or damaged airbags."  *Id*. at 169 (Honda Service Bulletin 10-039 dated

September 12, 2014).  Authorized dealers were advised that "[a]ll the vehicles

involved in this campaign require inspection.  However, only a very small

number of these vehicles require replacement of the airbag inflator compared to

the large number of vehicles that will require an inspection."  *Id.* at 170.  The

---

[1] As noted by Rohrman's expert, this recall was "part of the largest recall in history, known collectively as the 'Takata recalls.'  Takata was a restraint system manufacturer and supplier to Honda."  Appellant's Appendix, Volume 2 at 78.

instructions were to first inspect the driver's airbag for unusual markings that might indicate it was the wrong airbag for the vehicle or that it was counterfeit. Finding none, the airbag was to be removed to determine whether the airbag was made by Takata or another manufacturer. If it was made by a manufacturer other than Takata, the airbag was not defective and was to be reinstalled. If the airbag was made by Takata, the airbag serial number and the vehicle identification number ("VIN") were to be entered into a database that would indicate whether the airbag was okay and could be reinstalled or whether it needed to be replaced. *See id.* at 170-72.

[3]     Upon receiving the recall notice for her 2004 CR-V in late 2014, Tutino looked online to find the nearest authorized Honda dealership and made an appointment with Rohrman to have her vehicle serviced for the recall. Douglas Michael Thayer, a master technician at Rohrman, completed the service on Tutino's CR-V on January 17, 2015. He removed the driver's airbag and entered the serial number into Honda's database. "The database indicated that the airbag was not subject to the recall and that it was to be reinstalled." *Id.* at 83. Thayer reinstalled the airbag, verifying that it was properly installed, and that the SRS warning light was not continuously displayed on the dashboard.[2]

---

[2] SRS stands for "Supplemental Restraint System," the proper name for the airbag system in a vehicle. The SRS consists of the airbags, seat belt tensioners, sensors, and an electronic control unit ("ECU") that monitors and records information about the system. When the SRS is working properly, the SRS warning light briefly illuminates on the dashboard when the vehicle is started and then fades away after a few seconds. If the SRS warning light does not come on when the vehicle is started, remains illuminated, or comes on at any time other than upon ignition, the SRS is disabled and requires service. 2004 CR-V Online Reference

Tutino confirmed the SRS light was not abnormally illuminated at any time after the recall service. Tutino seemed to question whether Rohrman actually did any work on her vehicle; in her deposition, she testified that after approximately two hours, "I walked out there and saw my car sitting in the very same spot where they had put it in the back, and I thought . . . they would be – at least started on it by now." *Id.* at 103. Tutino asked someone in the service area when her car would be ready and was told it was done and given her keys. Tutino noted that when she took her car in, she was embarrassed because it had dust on the dashboard, but she had decided not to clean it off since it was going to be worked on. When she retrieved her car, "there was not even a single fingerprint mark on it, nothing. It just looked undisturbed." *Id.* at 104.

[4] On July 14, 2015, Tutino was the second car in the left turn lane on southbound State Road 37 waiting to turn onto East Harding Street in Indianapolis. She was wearing her seat belt. Tutino was hit from behind "very hard" by a 2008 Ford Fusion, which pushed her car into the 2006 Chevy Cobalt in front of her "so hard" that the Cobalt was pushed into the intersection. *Id.* at 48. Tutino's driver's airbag did not deploy and her seat belt did not lock up. She suffered serious injuries as a result of the crash.

Owner's Manual, Driver and Passenger Safety at 5-29,
http://techinfo.honda.com/rjanisis/pubs/OM/AH/ACR0404OM/enu/CR0404OM.PDF.

[5] Approximately two weeks after this accident, Tutino received another notice of recall from American Honda that stated, "Even if your vehicle was previously repaired, your vehicle is still covered by this recall and will need to be repaired again." *Id.* at 178. The notice was related to a May 2015 update to Service Bulletin 10-039 that superseded previous service bulletins. The updated service bulletin indicated that the "inspection procedure for Takata driver's airbags was removed [from the previous bulletins] because all Takata driver's airbag inflators installed in the recall vehicle population are being replaced." *Id*. at 153. Tutino returned to Rohrman for service related to this recall in October 2015.

[6] Tutino filed her complaint against Rohrman on July 10, 2017, alleging that Rohrman failed to properly perform the recall service on January 17, 2015, and failed to inform Tutino of the May 2015 recall until after her accident in July 2015. Rohrman filed a motion for summary judgment, designating an expert opinion in support. Tutino responded, designating her own expert opinion. Following a hearing, the trial court granted summary judgment to Rohrman. Tutino now appeals. Additional facts will be provided as necessary.

# Discussion and Decision

## I. Standard of Review

[7] When reviewing the grant or denial of summary judgment, we apply the same test as the trial court: summary judgment is appropriate only if the designated evidence shows there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Sedam v. 2JR Pizza Enters., LLC*, 84 N.E.3d 1174, 1176 (Ind. 2017). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Thus, if Rohrman "demonstrate[d] the absence of any genuine issue of fact as to a determinative issue," it is entitled to summary judgment unless Tutino came forward with contrary evidence showing a triable issue. *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994).

[8] Our review is limited to those facts designated to the trial court, T.R. 56(H), and we construe all facts and reasonable inferences drawn from those facts in favor of the non-moving party, *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013). On appeal, the non-moving party carries the burden of persuading us the grant of summary judgment was erroneous. *Hughley*, 15 N.E.3d at 1003. A grant of summary judgment will be affirmed if it is sustainable upon any theory supported by the designated evidence. *Miller v. Danz*, 36 N.E.3d 455, 456 (Ind. 2015).

## II. Designated Summary Judgment Evidence

[9] In support of its motion for summary judgment, Rohrman designated, among other things, the affidavit of its expert, James R. Chinni, President and Principal Engineer of Engineering Answers, LLC. Chinni incorporated into his

affidavit a report he prepared regarding this incident. Chinni summarized the findings from his report in his affidavit:

a. The subject 2004 Honda CRV is equipped with a SRS system that is designed to deploy during moderate to severe frontal collisions. The National Highway Transportation Safety Administration defines moderate to severe frontal crashes as equivalent to flat barrier impacts at a NO-FIRE speed change of 8 mph and MUST-FIRE speed change of 14 mph or higher.

b. The subject 2004 Honda CRV includes an SRS electronic control unit with dual thresholds. If the driver's seat belt is latched, airbags deploy at a slightly higher crash severity threshold.

c. In the subject incident, the impact of the 2008 Ford Fusion into the rear of the subject 2004 Honda CRV would not result in a frontal airbag deployment in the CRV, regardless of severity.

d. The frontal airbags in the subject Honda CRV could potentially deploy due to the subsequent collision into the rear of the 2006 Chevy Cobalt. The CRV's airbags would not deploy if the 2008 Ford Fusion impacted the rear of the CRV at speeds less than 29.5 mph. The CRV's airbags would be expected to deploy if the 2008 Ford Fusion impacted the rear of the CRV at speeds greater than 35.7 mph.

e. The post-impact damage to the subject 2004 Honda CRV is not consistent with damage that would be expected from a crash that would deploy frontal airbags. The post-impact damage and repairs are consistent with low speed bumper impact tests of similar Honda CRV's [sic] conducted by the Insurance Institute for Highway Safety.

f. Inspection of the Supplemental Restraint System Electronic Control Unit (["]SRS ECU") in the subject Honda CRV indicated that it never experienced a frontal collision above the NO-FIRE threshold in the entire time it has been installed.

g. Vehicle manufacturers like Honda are required to notify owners of recalls that may affect their vehicles. Vehicle manufacturers also determine the actions required to remedy the condition. Dealerships implement remedies to recalls but are not responsible for initiating recalls or notifying owners of the recalls.

h. No recalls applicable to the Honda CRV affect whether the SRS ECU deploys airbags during a crash. Specifically, the Takata recalls do not affect whether airbags should or should not deploy during a crash.

i. All records indicate that Bob Rohrman Indy Honda completed all driver airbag related service to the Honda CRV in accordance with service bulletins provided by Honda.

j. The subject accident on July 14, 2015 was not severe enough to deploy the frontal airbags in the Honda CRV.

Appellant's App., Vol. 2 at 59-61. Accordingly, Rohrman moved for summary judgment on the basis that it is "not responsible for recall notifications, the recall at issue did not involve non-deployment concerns, [] the undisputed evidence shows that [Rohrman] properly performed all recall work . . . [and] the Honda CRV's airbags did not deploy during the subject accident because the accident did not involve sufficient force to trigger airbag deployment . . . ." *Id.* at 15.

[10]     In her response to the motion for summary judgment, Tutino stated that she sued Rohrman "because its' [sic] service department failed to follow Honda's instructions as set out in [service bulletin 10-039], negligently servic[ed] [Tutino's] vehicle, fail[ed] to repair and or replace the vehicle's airbag system, misrepresent[ed] to [Tutino] that the repair work had been done when in fact it had not been done; putting [Tutino] in danger of being seriously injured or even killed in an auto accident." *Id.* at 84-85. Tutino designated the affidavit and accompanying report of her expert, Tony Passwater, founding partner of Quality Assurance Systems International, LLC and president of AEII Consulting Services, LLC. Passwater's report concluded:

> [I]n my opinion, [Rohrman] did not perform the work properly as outlined in the Honda Service Bulletin 10-039 on January 17, 2015, but did later replace the defective driver's side inflator unit after the accident on October 17, 2015.
>
> There were extensive repairs made to the floor and other inner structural panels along with other sufficient damages consistent with normal frontal airbag deployments.
>
> I also believe Mrs. Tutino's vehicle was traveling at sufficient speed and have [sic] enough deceleration from impact into [the vehicle in front] that the frontal airbag would normally deploy.

*Id.* at 133. With respect to the conclusion that Rohrman did not properly perform the recall work, Passwater's report specifically refers to Rohrman's failure to make a punch mark under the fifth character of the VIN to indicate that the recall inspection had been done. *See id*. at 131. And, although he

acknowledges the proper procedure was to enter a Takata airbag's serial number and the vehicle's VIN into the Honda database "to determine *if* the air bag should be replaced[,]" he summarily concluded the air bag inflator should have been replaced because "it was part of the recall[.]" *Id.* (emphasis added). Passwater included no information in his report demonstrating that the airbag was a Takata replacement airbag – the only airbags subject to the recall at the time – or that the serial number placed it in the category of airbags that needed to have the inflator replaced.

[11]     Following Tutino's submission, Rohrman deposed her expert and then filed a reply brief in support of its motion for summary judgment, designating parts of Passwater's deposition as additional evidence. In his deposition, Passwater stated:

> Q: . . . Do you have anything to indicate that this recall had anything to do with non-deployment?
> A: No.
> Q: Because it didn't did it?
> A: This recall, no.
> Q: [T]he replacement of this igniter[3] A, the original one . . ., and igniter B, the replacement one through the recall, has no bearing on deployment or non-deployment, does it?
> A: No.
> * * *
> Q: Now, we've established that the . . . recall didn't change anything with respect to whether the airbag should or shouldn't deploy; right?

---

[3] The parties use "inflator" and "igniter" interchangeably.

A: Correct.

Q: So replacing the airbag in 2015 would have changed nothing with respect to triggering deployment here?

A: That is not – you can't say yes or no. Most likely because of the recall had nothing to do with it, yes, but I can't say 100 percent that it would.

Q: But most likely replacing that inflator would not have changed anything with respect to deployment; right?

A: Correct.

Q: And we know the SRS light was not on after the dealership performed the January 2015 recall work; right?

A: Correct.

Q: So we know the airbag installed by whomever was installed correctly; right?

A: Yes.

*Id.* at 213, 216.

## III. Failure to Properly Perform Recall Service

[12]     Tutino claimed that Rohrman is responsible for her driver's airbag failing to deploy in the collision due to the work Rohrman did (or did not) perform pursuant to the American Honda recall. The designated evidence shows that both parties' experts agreed that front airbags are not designed to deploy during a rear-end collision but they disagreed about whether the force of the front-end collision when Tutino's car struck the car in front of her was sufficient to meet the deployment threshold for the front airbags. They also disagreed about whether Rohrman properly performed the recall work in January 2015. But these disagreements do not create a genuine issue of *material* fact because they do not bear on the ultimate resolution of the determinative issue. The

determinative issue is whether Rohrman is responsible for the airbag failing to deploy in Tutino's collision. Given Passwater's deposition testimony, there is no genuine issue about that material fact. Rohrman was tasked with performing recall work that was intended to address issues that could occur *when* an airbag deployed but did *not* involve anything that would impact whether the airbag should have deployed. *See id.* at 169 (Service Bulletin 10-039 stating that "[i]f an affected airbag *deploys*," the inflator could rupture (emphasis added)).

[13]     Tutino argues that a jury must decide whether Rohrman is responsible for the airbag failing to deploy because there is conflicting evidence on whether the recall work was properly done and whether the airbag should have deployed in this particular collision. Even if we accept Tutino's position that Rohrman either did not perform the recall work in January at all or did not perform it correctly because it did not replace the airbag inflator, and even if we accept her position that her collision should have caused the airbag to deploy,[4] her claim still fails. Rohrman designated evidence that the recall work was performed

---

[4] This is a questionable proposition given that Tutino's expert agreed in his deposition that the seat belt pretensioner activation threshold is lower than the airbag deployment threshold and that the seat belt pretensioners did not activate in this collision per the information available from the SRS ECU which records all incidents. When seat belt pretensioners activate, they lock up the seat belt to restrain the wearer and once they have been activated, the seat belts must be replaced. *See, e.g.*, *id.* at 215 (Passwater stating that the seat belt pretensioner threshold is lower than the airbag deployment threshold; that once fired, seat belts have to be replaced; and that the pretensioner was never replaced in Tutino's vehicle). Tutino herself stated in her deposition that the seat belts did not lock up and that they have never been replaced. *See, e.g.*, *id.* at 107, 122. Regardless, we can accept Tutino's position that the airbag should have deployed and still affirm summary judgment for Rohrman because the determinative issue is whether Rohrman's service work affected whether the airbag *would* deploy.

and performed correctly and that the threshold for deploying the airbag was not reached in this collision, but more relevantly, Rohrman also designated evidence that "[n]o recalls applicable to the Honda CRV affect whether the SRS ECU deploys airbags during a crash. Specifically, the . . . *recalls do not affect whether airbags should or should not deploy* during a crash." *Id.* at 60 (emphasis added). In turn, Tutino designated evidence that the threshold for deploying the airbag *was* reached, creating an issue of fact, but when it came to tying the recall work to the airbag deployment, her expert essentially aligned with Rohrman's, agreeing that the recall did not have anything to do with airbag deployment and that he had no evidence to indicate otherwise. *See id.* at 213.[5] Thus, there is no issue as to the *material* fact of whether the recall work Rohrman performed could be responsible for the failure of the airbag to deploy in Tutino's accident. *See Romero v. Brady*, 5 N.E.3d 1166, 1170 (Ind. Ct. App. 2014) (noting that the genuine issues of material fact identified by the

---

[5] Tutino points to the following exchange from Passwater's deposition as evidence he did not agree that Rohrman's failure to replace the airbag inflator had no bearing on whether the airbag should have deployed:

> Q: And we know, had they done the work even as you claim they should and replaced the airbag inflator, it doesn't change anything, does it?
> A: I didn't say that. I said that, according to the recall, it wouldn't change anything.

Appellant's App., Vol. 3 at 50. First, as Rohrman points out, the deposition page on which this passage appears (in addition to several other pages of deposition testimony included in Volume 3 of the Appellant's Appendix) does not seem to have been designated to the trial court by any party but instead added to the appendix for purposes of this appeal. This passage is therefore not properly citable to this court. *See Scribner v. Gibbs*, 953 N.E.2d 475, 486 (Ind. Ct. App. 2011) ("We cannot consider evidence not designated to the trial court in reviewing its summary judgment ruling."). Second, this seems to us to be a distinction without a difference, and regardless, Tutino did not provide any evidence tying replacement of the airbag inflator to proper deployment.

nonmovant "are not material questions of fact because they do not bear on the ultimate resolution of a relevant issue" and thus, even if the facts are as the nonmovant alleges, the nonmovant failed to show that those facts impact potential liability), *trans. denied*.

[14] We acknowledge Tutino's legal argument that based upon *Hughley*, "there is a very, very, low threshold for an individual . . . to escape a Summary Judgment Motion and there's an extremely high threshold for the movant . . . ." Transcript, Volume II at 17; *see also* Appellant's Brief at 8. That *Hughley* sets a high bar for a summary judgment movant is undeniably true, as is the fact that *Hughley* determined even a "perfunctory and self-serving" affidavit was sufficient to defeat summary judgment. 15 N.E.3d at 1004. But *Hughley* does not *eliminate* summary judgment in favor of letting every case in which the summary judgment opponent designates *any* evidence go to trial; it simply reiterates that Indiana has a heightened standard for granting summary judgment that can be defeated on "thin" evidence as long as the evidence raises a factual issue. *Id.* at 1005. Here, Passwater's affidavit, as supplemented by his deposition that elaborated on and clarified his conclusions, did not raise a genuine issue of material fact about whether the work Rohrman performed or did not perform on Tutino's vehicle affected whether her airbag would deploy in a front-end crash. We note, however, that Rohrman's characterizes Tutino's argument as "simply to state, 'Jury. Jury. Jury. *Hughley*. *Hughley*. *Hughley*.'"

Brief of Appellees at 35.[6]  This response unnecessarily minimizes Tutino's reliance on a legitimate part of Indiana's summary judgment practice – emphasizing Indiana's unique standard.  That we ultimately agree with Rohrman that *Hughley* does not preclude summary judgment in this case should not be taken to mean that we agree with Rohrman's dismissive manner of making its argument.

## IV.  Failure to Warn

Tutino also claimed that Rohrman, in agreeing to service her vehicle on January 17, 2015, assumed a duty to warn her that her airbag was defective.  Tutino's argument about this claim is not well-developed enough for us to discern the particular argument she is making – it could be that she claims Rohrman failed to tell her on January 17, 2015 that her airbag was defective or failed to tell her of the later-issued recall in a timely fashion or both.  As to the first interpretation, there is no designated evidence that the airbag was defective pursuant to the terms of the September 2014 service bulletin.  As to the second, Rohrman designated on summary judgment the opinion of its expert that

> Vehicle manufacturers like Honda are required to notify owners of recalls that may affect their vehicles.  Vehicle manufacturers also determine the actions required to remedy the condition.  Dealerships implement remedies to recalls but are not responsible for initiating recalls or notifying owners of the recalls.

[6] Rohrman repeated this phrase in its Motion for Oral Argument.

Appellant's App., Vol. 2 at 60. Tutino designated no evidence to oppose this.[7] In fact, 49 U.S.C. §§ 30118 and 30119 squarely place the onus on a vehicle manufacturer to notify both the National Highway Traffic Safety Administration and owners, purchasers, *and* dealers when the manufacturer learns one of its vehicles contains a safety-related defect and to remedy that defect without charge. *See U.S. v. Gen. Motors Corp.*, 656 F. Supp. 1555, 1558 (D.D.C. 1987). The law places that responsibility on manufacturers, and Tutino offered no evidence that any individual at Rohrman undertook an ongoing duty to keep her apprised of future recalls. As there is no genuine issue of material fact as to who had the duty to notify Tutino of defects in her vehicle, the trial court properly granted summary judgment to Rohrman on this claim.

# Conclusion

[16] As Rohrman demonstrated the absence of a genuine issue of fact as to a determinative issue and Tutino failed to come forward with contrary evidence showing an issue remained for trial, the trial court properly granted summary judgment to Rohrman. The judgment of the trial court is affirmed.

[17] Affirmed.

---

[7] Tutino states in her brief that Rohrman "failed to warn [her] of the subsequent recall for the same airbag that it 'serviced' on January 17, 2015 until *after* her accident." Appellant's Br. at 14. However, there seems to be no dispute that Rohrman *never* informed her of the subsequent recall as it was not obligated to do so. Instead, Tutino received notice of the subsequent recall from American Honda.

Baker, J., and Najam, J., concur.